*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

No. 05-5824

CARLOS ALBERTO OSSA-GALLEGOS,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00043—Robert L. Echols, Chief District Judge.

Submitted: June 2, 2006

Decided and Filed: June 30, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Ronald C. Small, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Byron M. Jones, UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Carlos Alberto Ossa-Gallegos, a foreign national, pled guilty to a one-count indictment that charged him with illegally reentering the United States after having been previously removed because he had committed an aggravated felony. The district court sentenced Ossa-Gallegos to 33 months of imprisonment and two years of supervised release. On appeal, Ossa-Gallegos objects to (1) the district court's finding that his prior aggravated felony was violent in nature, (2) the alleged unreasonableness of his sentence, and (3) the holding that the two-year period of supervised release should be tolled while he remains outside of the United States. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

# I. BACKGROUND

Ossa-Gallegos, a citizen of Colombia, was charged in 1996 with "unlawfully, intentionally, and knowingly caus[ing] the penetration" of his 10–year-old nephew. He pled guilty to a reduced charge of sexual assault under Texas law and was sentenced to two years of imprisonment. In August of 1997, Ossa-Gallegos was removed to Mexico, his designated country of removal.

Ossa-Gallegos unlawfully returned to the United States in 1999. He sought employment, obtained a driver's license using his actual name, and paid his federal income taxes. In March of 2004, Ossa-Gallegos, his wife, and his daughter were walking in a residential neighborhood placing advertisements for his lawn business into mailboxes. A concerned neighbor called the police, which led to Ossa-Gallegos's arrest for being a previously deported alien. Ossa-Gallegos asserts that he did not intend to break the law when he opened the mailboxes, but was simply trying to attract customers for his business.

In December of 2004, Ossa-Gallegos pled guilty to a one-count indictment that charged him with illegal reentry after having been previously deported for committing an aggravated felony, a violation of 8 U.S.C. § 1326(b)(2). Ossa-Gallegos was sentenced after the Sentencing Guidelines were declared no longer mandatory by the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005). He admitted that his prior sexual-assault conviction constituted an aggravated felony, but made no other admissions about the nature of that conviction. The district court concluded that the conviction constitutes a crime of violence within the meaning of § 2L1.2(B)(1)(A) of the Guidelines, and therefore added 16 levels to Ossa-Gallegos's offense level in computing his Guidelines sentencing range. On appeal, Ossa-Gallegos does not challenge the district court's interpretation of the Guidelines in enhancing his sentence; he instead challenges the district court's authority to engage in factfinding regarding the nature of his prior aggravated felony.

The district court permitted Ossa-Gallegos a three-level reduction for acceptance of responsibility. Although the Guidelines range applicable to his offense was 41 to 51 months after the reduction, Ossa-Gallegos was further granted a two-level downward departure based on the aberrational nature of his prior crime in comparison with his law-abiding conduct since returning to the United States. Moreover, Ossa-Gallegos had not intended to break the law when he advertised his lawn business, and the district court found that he was unlikely to commit another crime.

In addition, the district court examined statistics regarding the average sentence of aliens convicted of illegal reentry in other parts of the country that employ "fast-track" procedures to process such convictions. Special approval must be given by the United States Attorney General for a state to participate in a fast-track program, so not every defendant is afforded this opportunity. The sentences in fast-track jurisdictions tend to be lower because, in exchange for an alien agreeing to waive his or her right to appeal, collaterally attack the conviction, or file certain motions, a four-level reduction may be applied to the Guidelines sentence. The district court's two-level reduction that resulted in a 33-month sentence was partially based on its concerns about the "equality of justice when sentences vary for people based on where they are sentenced."

On appeal, Ossa-Gallegos argues that the district court's 16-level enhancement violated his Sixth Amendment rights because "he did not admit to any facts that would establish that his felony constitutes a 'crime of violence' for purposes of the enhancement." Without this enhancement, Ossa-Gallegos's Guidelines sentencing range would have been 15 to 21 months. Ossa-Gallegos also contends that his sentence was unreasonable in light of the factors set forth 18 U.S.C. § 3553(a), and that the district court erred in tolling his term of supervised release during the time that he remains outside of the United States.

## II. ANALYSIS

### A.    Standard of review

We review de novo the district court's application of the Sentencing Guidelines. *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir. 2002). When a defendant challenges a district court's sentence pursuant to 18 U.S.C. § 3553(a), the sentence is reviewed for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). Reasonableness review requires this court to consider "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Id.*

### B.    Classification of Ossa-Gallegos's prior felony as violent

Ossa-Gallegos first argues that the district court exceeded its constitutional authority under the Sixth Amendment when it imposed "an enhancement based on facts not admitted by him and not found by a jury." He acknowledges, however, that the line of cases beginning with *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), permits factfinding by the court regarding the nature of a prior conviction. But he wishes to preserve the issue in the event that the Supreme Court reconsiders *Almendarez-Torres*. By Ossa-Gallegos's own admission, the district court's classification of his prior sexual-assault conviction as violent does not violate his Sixth-Amendment rights under the current state of the law. *See United States v. Richardson*, 437 F.3d 550, 555 (6th Cir. 2006) (holding that "controlling law, both before and after *Booker*, counsels that a judge can make factual findings about a defendant's prior convictions without implicating the Sixth Amendment"). The 16-level enhancement under the Guidelines, therefore, does not constitute constitutional error.

### C.    Reasonableness review

Ossa-Gallegos next argues that the district court's sentence is "manifestly unreasonable in light of the factors evaluated in reaching its final decision." He specifically argues that (1) a two-level departure does not entirely eliminate the disparity between his sentence and that of defendants with similar criminal histories in fast-track jurisdictions, (2) the district court was not concerned with any recidivism by Ossa-Gallegos, and (3) the 16-level enhancement is unduly harsh in light of the exemplary life that Ossa-Gallegos has lived since returning to the United States.

In determining the particular sentence to be imposed, the key portions of 18 U.S.C. § 3553(a) require the courts to consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed--
   (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B)    to afford adequate deterrence to criminal conduct;
   (C)    to protect the public from further crimes of the defendant; and
   (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for--

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --
>
> . . .

(5) any pertinent policy statement–

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The district court carefully considered the arguably "harsh" 16-level enhancement for Ossa-Gallegos's prior sexual-assault conviction and the fact that it occurred a decade ago. It also listened to testimony from friends and relatives, including Ossa-Gallegos's pastor, regarding Ossa-Gallegos's positive contributions to the community. The court further noted that Ossa-Gallegos has "an understanding and appreciation of the laws of this country . . . and he's pledged not to break the law again."

Finally, the court considered statistics regarding similarly situated defendants who are convicted in districts that employ a fast-track procedure. This procedure requires that a defendant enter into a plea bargain with the government and forfeit the right to appeal or collaterally attack the conviction in exchange for a maximum four-level sentence reduction. An empirical study cited by Ossa-Gallegos demonstrates that, in three fast-track districts, defendants with five prior convictions and two prior deportations received an average sentence of 32 months. *See* Linda Drazga Maxfield & Keri Burchfield, *Immigration Offenses Involving Unlawful Entry: Is Federal Practice Comparable Across Districts?*, 14 Fed. Sent. R. 260, Mar.-Apr. 2002. This average sentence is shorter than the one Ossa-Gallegos received after the two-level reduction, even though he has only one prior conviction and one prior deportation. As a result, Ossa-Gallegos argues that his sentence does not "reasonably correlate to the [district] court's express recognition" of the § 3553(a) factors.

"A prime objective of the Sentencing Guidelines was to eliminate or, at least reduce, disparity in the sentencing of similarly situated defendants." *United States v. Paster*, 173 F.3d 206, 220 (3d Cir. 1999) (citations omitted). Although the district court did not entirely eliminate the disparity between Ossa-Gallegos's sentence and the sentences of defendants with similar criminal histories in fast-track jurisdictions, its two-level downward departure was intended to reduce this disparity. The defendants in fast-track districts also give up their right to challenge their conviction in order to qualify for the four-level downward departure, a right that Ossa-Gallegos has retained. Ossa-Gallegos is therefore not similarly situated to these defendants, and "Congress seems to have endorsed at least some degree of disparity by expressly authorizing larger downward departures for defendants in 'fast track' districts." *United States v. Montes-Pineda*, 445 F.3d 375, 379-80 (4th Cir. 2006).

Finally, avoiding nationwide disparities in sentencing is only one factor to be considered under § 3553(a). *United States v. Martinez-Martinez*, 2006 WL 722140, at *3 (7th Cir. March 23, 2006) ("That some courts have chosen to avoid disparity does not mean that all district courts are compelled to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable."). The district court in the present case considered several other factors and, as a result, reduced Ossa-Gallegos's sentence from the initial Guidlines range. We conclude that this reduction was reasonable.

### D.      Tolling of supervised release

Finally, Ossa-Gallegos challenges the district court's authority to toll the period of supervised release during the time that he remains outside of the United States. Although Ossa-Gallegos recognizes that the Sixth Circuit in *United States v. Isong*, 111 F.3d 428 (6th Cir. 1997), held that the period of a deported alien's supervised release may be tolled until he or she returns to this country, three circuits have since rejected that holding. *See United States v. Okoko*, 365 F.3d 962 (11th Cir. 2004); *United States v. Juan-Manuel*, 222 F.3d 480 (8th Cir. 2000); *United States v. Balogun*, 146 F.3d 141 (2d Cir. 1998). Ossa-Gallegos therefore argues that the present case should serve as a vehicle for the reconsideration of *Isong* through en banc review.

In addition to specific, enumerated conditions that courts must place on supervised release, 18 U.S.C. § 3583(d) permits a district court to impose "any other condition it considers to be appropriate" so long as the condition is reasonably related to correctional or rehabilitative purposes. The majority in *Isong* concluded that the tolling of a deported alien's period of supervised release is "reasonably related" to rehabilitative purposes because aliens will generally not be supervised while in their country of removal. 111 F.3d at 431. Tolling of supervised release, according to the majority, is "an appropriate way to make supervised release meaningful for defendants who are going to be deported." *Id.*

In dissent, Judge Moore argued that tolling is not a reasonable condition of supervised release under 18 U.S.C. § 3583(d). The dissent relied on the explicit statutory provision that "the term of supervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e). In addition, the only statutory provision concerning the tolling of supervised release states that "supervised release does not run during any period in which the person is imprisoned . . . unless the imprisonment is for a period of less than 30 consecutive days." *Id.* The dissent cited the maxim of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) for the proposition that Congress intended for a defendant's incarceration to be the sole instance when tolling of supervised release is permitted. 111 F.3d at 432 (Moore, J., dissenting). Finally, the dissent reasoned that because 18 U.S.C. § 3583(d) authorizes the sentencing court to order deportation as a condition of supervised release, the statutory scheme envisions the period of supervised release running during the alien's absence from the United States. *Id.*

The three other circuits to address this issue since *Isong* have all rejected its holding. They have relied on the reasons articulated by the dissent in *Isong*, in addition to concluding that the term "any other condition" in § 3583(d) should be limited to "requirements that the defendant himself do or refrain from doing specified acts." *Balogun*, 146 F.3d at 145. "Therefore, tolling, which relates to the timing of the supervised release rather than the conduct of the defendant, should not be viewed as a condition of the release because it relates to something beyond the control of the defendant and is substantively different from all of the other conditions expressly provided for under § 3583(d) and the Sentencing Guidelines." *Okoko*, 365 F.3d at 966 (citation and quotation marks omitted).

Notwithstanding the weight of authority from these other circuits and the strength of the dissent in *Isong*, we are bound by this circuit's holding in that case. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") Under the present state of Sixth Circuit law, therefore, Ossa-Gallegos will face a term of supervised release no matter how long he has been outside of the United States if and when he receives permission to reenter. Ossa-Gallegos, of course, is free to seek en banc review of this case if he so desires.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.