File Name: 07a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

  *v.*

    No. 05-5824

CARLOS ALBERTO OSSA-GALLEGOS,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00043—Robert L. Echols, District Judge.

Argued: March 7, 2007

Decided and Filed: June 21, 2007

Before: BOGGS, Chief Judge; MARTIN, BATCHELDER, MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Ronald C. Small, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Byron M. Jones, UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Ronald C. Small, Jennifer N. Coffin, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Byron M. Jones, UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

  KAREN NELSON MOORE, Circuit Judge. We reheard this case en banc to resolve the narrow question of whether the practice of tolling a period of supervised release for a deported offender is authorized by the sentencing statutes. Defendant-Appellant Carlos Alberto Ossa-Gallegos ("Ossa-Gallegos") appealed his sentence arguing, inter alia, that the district court did not have the authority to toll the period of supervised release while he was outside the jurisdiction of the United States as the result of deportation.

  A panel of this court, constrained by our earlier opinion in *United States v. Isong*, 111 F.3d 428 (6th Cir.), *cert. denied*, 522 U.S. 883 (1997), was obliged to affirm the district court's decision to toll the period of supervised release. *United States v. Ossa-Gallegos*, 453 F.3d 371, 376-77 (6th Cir. 2006) (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this [c]ourt cannot overrule the decision of another panel. The prior decision remains

1

controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this [c]ourt sitting en banc overrules the prior decision.")).

For the reasons set forth in Parts II.B and II.C of the panel opinion written by Judge Gilman (attached at Appendix A), we conclude that there was no constitutional error with respect to the district court's classification of Ossa-Gallegos's prior felony as violent, and that the district court's sentence was procedurally and substantively reasonable. *Ossa-Gallegos*, 453 F.3d at 374-76. However, because we overrule *Isong*, and hold both that tolling is not a "condition" under 18 U.S.C. § 3583(d), and that the statutory scheme evidences Congress's intent that the period of supervised release would not be tolled while the defendant is outside the United States as the result of deportation, we **VACATE** the judgment of the district court and **REMAND** the case for resentencing with instructions that the remand be limited to setting forth lawful conditions of supervised release.

## I. BACKGROUND

Ossa-Gallegos pleaded guilty to a one-count indictment charging him with illegal reentry by a previously deported aggravated felon, a violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). Joint Appendix ("J.A.") at 278 (J. at 1). The district court sentenced Ossa-Gallegos to thirty-three months of imprisonment, two years of supervised release, and a $100.00 special assessment. At issue in this case is one of the special conditions of supervised release imposed by the district court. The special condition provided that if Ossa-Gallegos were deported

> the Defendant shall not reenter the United States without the express permission of the United States Attorney General. The term of supervised release shall be tolled while the Defendant remains outside the jurisdiction of the United States. Within 24 hours of returning to the United States, the Defendant shall report in person to the nearest U.S. Probation Office. Any undischarged term of supervised release shall not recommence unless the Defendant is available for supervision.

J.A. at 281 (J. at 4).

On appeal to a panel of this court, Ossa-Gallegos challenged the district court's authority to toll the period of supervised release while he remained outside the jurisdiction of the United States. While acknowledging that the panel was bound by our earlier precedent in *United States v. Isong*, 111 F.3d 428 (6th Cir. 1997), Ossa-Gallegos urged us to reconsider our previous position via en banc review. *Ossa-Gallegos*, 453 F.3d at 376. Citing *Isong*, the panel affirmed the district court's decision to toll supervised release, and we subsequently vacated the panel opinion and granted en banc review. Like the original panel, we have jurisdiction over this appeal pursuant to both 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. ANALYSIS

We review de novo this pure legal question regarding sentencing. *United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003). An examination of the language and structure of the sentencing statutes leads us to conclude that district courts are not authorized to toll the period of supervised release while the defendant is deported and outside the United States. First, tolling is not a "condition" of supervised release under 18 U.S.C. § 3583(d). Second, the statutory scheme evidences Congress's intent that the period of supervised release not be tolled while the defendant is deported and outside the United States.

**A. Tolling Is Not a "Condition" of Supervised Release Under 18 U.S.C. § 3583(d).**

Congress has authorized district courts to include supervised release as part of a defendant's sentence, even in the case where the statute violated does not mandate a term of supervised release. 18 U.S.C. § 3583(a). In addition to specific, enumerated conditions that the district court must impose as part of supervised release, 18 U.S.C. § 3583(d) provides that "[t]he court may order, as a further condition of supervised release . . . any other condition it considers to be appropriate," if the condition is reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1) and (a)(2)(B)-(D),[1] "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in" 18 U.S.C. § 3553(a)(2)(B)-(D), and "is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a)." 18 U.S.C. § 3583(d).

Because § 3583(d) only authorizes district courts to order "conditions" of supervised release, the crux of our inquiry is whether tolling is properly understood as a "condition" of supervised release. If tolling is not a "condition," then district courts have no authority to issue tolling orders under § 3583(d). As all parties agree that § 3583(d) is the only provision under which the district courts may claim the authority to issue such orders, if district courts do not have authority under § 3583(d), then they have no authority to issue tolling orders.

*Isong* never addressed this question, but rather, the majority in *Isong* implicitly presumed tolling was a "condition" and then analyzed whether tolling was reasonably related to the § 3553(a) factors. *Isong*, 111 F.3d at 431. The term "condition" is not defined in the statute itself, but two canons of construction assist us in our endeavor: first, "the meaning of an undefined term may be deduced from nearby words under *noscitur a sociis*"; and second, "undefined terms are construed in accordance with their ordinary and natural meanings." *Limited, Inc. v. Comm'r*, 286 F.3d 324, 333 (6th Cir. 2002).

**1. Noscitur A Sociis**

Most of the enumerated conditions in § 3583(d) refer to mandatory conditions of supervised release. The district court must order the following: "that the defendant not commit another Federal, State, or local crime during the term of supervision"; that the defendant comply with requests for DNA collection when authorized by law; that the defendant not unlawfully possess or use a controlled substance; and that the defendant submit to drug testing within fifteen days of commencing supervised release and to at least two drug tests thereafter. § 3583(d). However, the court may "ameliorate[] or suspend[]" this last condition if testing is not available within a fifty-mile radius of the defendant's residence. *See id.* (referring to 18 U.S.C. § 3563(a)(4)).

Certain mandatory conditions are also required under § 3583(d) when the defendant has committed a particular crime. If the defendant is a first-time domestic-violence offender, the court must order that the defendant attend an offender-rehabilitation program if such a program exists within a fifty-mile radius of the defendant's residence. § 3583(d). If the defendant's crime requires compliance with the Sex Offender Registration and Notification Act, then the court must order, as a condition of supervised release, that the defendant comply with the Act's requirements. *Id.*

Several discretionary conditions are listed under § 3583(d). District courts may add these conditions to a defendant's sentence so long as they are reasonably related to the factors set forth

---

[1] These factors are as follows: consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant"; consideration of "afford[ing] adequate deterrence to criminal conduct"; consideration of "protect[ing] the public from further crimes of the defendant"; and consideration of "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D).

in 18 U.S.C. § 3553(a)(1) and (a)(2)(B)-(D), do not deprive the defendant of any more liberty than is reasonably necessary for the purposes of § 3553(a)(2)(B)-(D), and are consistent with pertinent policy statements. § 3583(d). Most of these enumerated, discretionary conditions are incorporated by reference to the statute governing conditions of probation. 18 U.S.C. § 3563(b)(1)-(b)(10), and (b)(12)-(b)(20). All of these potential conditions involve deeds which the defendant must perform or refrain from performing, such as participating in community service or refraining from associating with specific persons. 18 U.S.C. § 3563(b)(12), (b)(6). In addition, § 3583(d) enumerates two other discretionary conditions. First, if the defendant is an alien and subject to deportation, the court may order, as a condition of supervised release, "that he [or she] be deported and remain outside the United States, and may order that he [or she] be delivered to a duly authorized immigration official for such deportation." *Id.* Second, the court is permitted to order that a defendant who is required to register under the Sex Offender Registration and Notification Act must submit to multiple types of searches by law enforcement and probation officers. *Id.*

The court must revoke supervised release and sentence the defendant to imprisonment if a defendant violates certain conditions of supervised release which are listed in § 3583(g). If the defendant violates a condition that is not enumerated in § 3583(g), the district court still has discretion to revoke supervised release and sentence the defendant to imprisonment. 18 U.S.C. § 3583(e)(3). Therefore, violating any term of supervised release could result in revocation of supervised release and in imprisonment.

## 2. Definitions of "Condition" and "Tolling"

"Condition" has several dictionary definitions, one of which is pertinent to our inquiry: "a circumstance indispensable to some result; prerequisite; that on which something else is contingent; *conditions of acceptance*." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 425 (2d ed. 2001). *Id.* Turning to the conditions enumerated in § 3583(d), we believe that Congress clearly utilized this definition—prerequisites or conditions of acceptance—when referring to the "conditions" of supervised release. The right to supervised release is contingent upon the defendant's compliance with the enumerated conditions. If the defendant violates certain conditions, revocation of supervised release is automatic; violation of other conditions only triggers the court's power to exercise discretion to revoke supervised release. But all of these conditions are contingencies upon which the right to continue on supervised release depends.**²**

"'[W]e presume that Congress does not employ the same word to convey different meanings within the same statute.'" *United States v. Juan-Manuel*, 222 F.3d 480, 487 (8th Cir. 2000) (quoting *United States v. Balogun*, 146 F.3d 141, 145 (2d Cir. 1998)). Because we conclude that Congress meant "that on which something else is contingent" when it enumerated "conditions" in § 3583(d), we likewise conclude that Congress meant "that on which something else is contingent" when it authorized district courts under § 3583(d) to order "any other condition [they] consider [] appropriate."

In contrast to the conditions enumerated in § 3583(d), "tolling" is not a contingency of supervised release. Black's Law Dictionary defines "toll" as "to stop the running of; to abate <toll the limitations period>." BLACK'S LAW DICTIONARY 1525 (8th ed. 2004). With respect to the

---

**²**The government argues that the discretionary condition that the defendant be deported and remain outside the United States is not a contingency upon which the right to continue on supervised release depends. *See* § 3583(d). We disagree because "the principal thrust of this 'condition' [i]s the requirement that the defendant 'remain outside the United States'; the requirement that [t]he [defendant] be deported is merely the necessary precursor to the constraint imposed on the conduct of the defendant, *i.e.*, that he [or she] stay out." *United States v. Balogun*, 146 F.3d 141, 145 (2d Cir. 1998). *See also United States v. Okoko*, 365 F.3d 962, 966 n.7 (11th Cir. 2004) (adopting *Balogun*'s reasoning); *United States v. Juan-Manuel*, 222 F.3d 480, 487 (8th Cir. 2000) (same).

supervised-release statute, tolling is best understood as "relat[ing] to the timing of the supervised release." *United States v. Okoko*, 365 F.3d 962, 966 (11th Cir. 2004). We believe that the continuation of supervised release is not contingent on tolling; rather, tolling describes the existing state of supervised release—that is, whether or not the period of supervised release is running.

"Tolling" is not a "condition" in the sense in which the term is used in § 3583(d), and therefore, courts do not have authority under § 3583(d) to issue special "conditions" of supervised release which toll the period for which deported aliens are subject to supervised release. Because § 3583(d) is the only statute from which district courts could conceivably claim their authority to issue orders tolling the period of supervised release while defendants are outside the United States pursuant to deportation, our holding today means that district courts have no authority to issue such orders.[3]

Concerns were raised at oral argument about the impact of this conclusion. If a district court may not toll the period of supervised release, then a term of supervised release continues while the alien is living abroad. The worry is that many conditions of supervised release may be difficult or impossible for the deported defendant to comply with while the defendant is living abroad. If the defendant is unable to comply with these conditions while abroad, the defendant violates the terms of supervised release for something which is outside his or her control. This, of course, offends basic notions of fairness. Fortunately, the statute is structured so that such a problem is avoidable. None of the mandatory conditions of supervised release enumerated in § 3583(d) necessarily requires physical presence in the United States. For example, a defendant need not be present in the United States in order to comply with the requirement that he or she refrain from using or possessing controlled substances. Of those mandatory conditions which could require presence in the United States, such as participation in drug testing, the district court is required to order participation only if such testing exists within a fifty-mile radius of the defendant's residence. § 3583(d). Thus, there is nothing inherent in the mandatory conditions listed in § 3583(d) which would force defendants to violate supervised release simply by virtue of the fact that they live abroad. As to the discretionary conditions of supervised release, we expect that district courts will use common sense in crafting discretionary conditions so that a defendant facing deportation is reasonably able to comply with the conditions while residing outside the United States.

## B.   The Statutory Scheme Evidences Congress's Intent That the Period of Supervised Release Would Not Be Tolled While the Defendant Was Deported and Residing Outside the United States

Our holding today is also based on the statutory structure. To start, the law is clear that "[t]he term of supervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e).[4] The only instance where Congress has explicitly provided for tolling

---

[3] The three other circuits that have determined that tolling is not a "condition" under § 3583(d) base their decision on the conclusion that a "condition of supervised release" is something over which the defendant has some degree of control, something which the defendant has to do or refrain from doing. *See Okoko*, 365 F.3d at 966; *Juan-Manuel*, 222 F.3d at 487; *Balogun*, 146 F.3d at 146. While we agree with our sister circuits' conclusion that tolling is not a "condition," and believe that their reasoning is sound, we base our conclusion on a more commonly understood definition of the word "condition." The question, in our view, is not whether the defendant *has control over* taking or not taking a certain action, but rather, whether the right to supervised release is *contingent upon* taking or not taking that action.

[4] We also note that § 3624 differs from the statute governing the running of a term of probation. 18 U.S.C. § 3564(a). The probation statute states that "[a] term of probation commences on the day that the sentence of probation is imposed, *unless otherwise ordered by the court.*" *Id.* (emphasis added). "This section adds further support to the proposition that Congress is well aware of how to vest district courts with discretion over the running of various time periods." *Isong*, 111 F.3d at 432 n.1 (Moore, J., dissenting).

the period of supervised release is when "the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."[5]  *Id.*

As the *Isong* dissent pointed out, in keeping with the canon of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), the fact that Congress explicitly allows for tolling only when a defendant is imprisoned indicates that Congress does not intend for district courts to toll the period of supervised release under any other circumstance. *Isong*, 111 F.3d at 431-32 (Moore, J., dissenting).  *See also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (relying on the canon).

The panel majority in *Isong* recognized this canon and its applicability in the case before it, but determined that because an unserved period of supervised release does not defer deportation, supervised release would be "meaningless" when the defendant is not within the United States. *Isong*, 111 F.3d at 431.  The tolling order, according to the *Isong* panel majority, was "an appropriate way to make supervised release meaningful for defendants who are going to be deported" and reside outside the United States. *Id.*  We infer from the panel majority's reasoning that it was attempting to make sense of an idea which, to it, sounded nonsensical:  the idea that a deportee is on *supervised* release while outside the jurisdiction of the United States.

Language in § 3583(d), however, evidences that Congress was not uncomfortable with such an arrangement.  The statute provides that a district court may impose a special condition of supervised release deporting the alien defendant and requiring the defendant to remain outside the United States. *Id.*  When a defendant is ordered "to leave and remain outside the United States *as a condition of* his [or her] supervised release, it stretches reason to conclude that [a] district court could [] suspend[] [the] term of supervised release during this time." *Isong*, 111 F.3d at 433 (Moore, J., dissenting).  This would create an incoherent situation where "time [would] stand still while various conditions of supervised release continue to operate upon a defendant." *Id. See also United States v. Juan-Manuel*, 222 F.3d at 487 ("Congress could not have intended to allow a defendant to be excluded from the United States as a *condition* of supervised release while, at the same time, allow all conditions of supervised release to be suspended for the duration of that exclusion."); *Okoko*, 365 F.3d at 966 (adopting this reasoning).

We recognize that another statute already prohibits a deported alien convicted of a felony from reentering the United States without permission of the Attorney General, so that a district court need not include this special condition authorized by § 3583(d) in order to provide that a deported alien must remain outside the United States. *See* 8 U.S.C. § 1326(a).  But the fact that § 3583(d) makes the special condition of supervised release available to district courts indicates that Congress envisioned the period of supervised release to be running during the period for which the deported defendant is outside the jurisdiction of the United States.

---

[5]According to the Eleventh and Eighth Circuits there are *two* instances where Congress explicitly provides for tolling. *Okoko*, 365 F.3d at 964-65; *Juan-Manuel*, 222 F.3d at 488.  In addition to cases of reincarceration, these circuits interpret 18 U.S.C. § 3583(i) as a tolling provision:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i).  Section 3583(i) extends the time period in which the government may pursue a revocation proceeding against a defendant who allegedly violated the terms of his or her supervised release, but for whom the period of supervised release has expired.  We do not view § 3583(i) as a tolling provision, because tolling requires an actual suspension of the running of the period of supervised release, and under § 3583(i) there is no suspension, but rather an extension of the period during which the government may pursue violations of supervised release.

Because the panel majority in *Isong* rejected the canon of *expressio unius est exclusio alterius* in order to reconcile a situation which we now conclude was in no need of reconciliation, we return to the question of whether Congress's explicit reference to tolling in only one instance evidences its intent that this was the sole instance when tolling the period of supervised release is authorized. Since the *Isong* decision, every other circuit court examining this question has adopted the reasoning articulated in the *Isong* dissent. *Okoko*, 365 F.3d at 967; *Juan-Manuel*, 222 F.3d at 487-88; *Balogun*, 146 F.3d at 146. The now-prevailing position "decline[s] to infer that the difference in treatment of the continuity of the supervised-release term with respect to reincarceration and deportation/exclusion was simply an oversight." *Okoko*, 365 F.3d at 967 (quoting *Balogun*, 146 F.3d at 146). Upon reconsideration of this point, we join the prevailing position; we conclude that if Congress had wanted to authorize tolling the period of supervised release while a defendant was outside the jurisdiction of the United States as the result of deportation, it would have expressly indicated this in the statute. Because Congress did not so indicate, we conclude that it is impermissible under § 3583(d) for district courts to toll the period of supervised release on the basis of a defendant's absence from the United States.

The parties raised a number of policy-based arguments in support of their respective positions. These arguments centered around whether the goals of supervised release are better realized through tolling and whether tolling provides an unjustified administrative burden on the United States Probation Office. We think it best to leave the resolution of these policy questions to Congress. If Congress determines that the goals of supervised release are better realized by giving district courts discretion to issue these types of tolling orders, then Congress is free to amend the legislation to provide district courts this authority.

### III. CONCLUSION

We acknowledge that § 3583(d) gives district courts latitude in creating additional conditions of supervised release beyond those enumerated in the statute. However, because tolling is not a "condition," and because tolling is inconsistent with the overall statutory scheme providing for supervised release, we conclude that a district court may not issue an order tolling the period of supervised release as a special condition of supervised release pursuant to § 3583(d). Accordingly, we **VACATE** the judgment of the district court and **REMAND** the case for resentencing with instructions that the remand be limited to setting forth lawful conditions of supervised release consistent with this opinion.

APPENDIX A

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*                  No. 05-5824

CARLOS ALBERTO OSSA-GALLEGOS,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00043—Robert L. Echols, Chief District Judge.

Submitted: June 2, 2006

Decided and Filed: June 30, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Ronald C. Small, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Byron M. Jones, UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

    [*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Carlos Alberto Ossa-Gallegos, a foreign national, pled guilty to a one-count indictment that charged him with illegally reentering the United States after having been previously removed because he had committed an aggravated felony. The district court sentenced Ossa-Gallegos to 33 months of imprisonment and two years of supervised release. On appeal, Ossa-Gallegos objects to (1) the district court's finding that his prior aggravated felony was violent in nature, (2) the alleged unreasonableness of his sentence, and (3) the holding that the two-year period of supervised release should be tolled while he remains outside of the United States. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Ossa-Gallegos, a citizen of Colombia, was charged in 1996 with "unlawfully, intentionally, and knowingly caus[ing] the penetration" of his 10–year-old nephew. He pled guilty to a reduced charge of sexual assault under Texas law and was sentenced to two years of imprisonment. In August of 1997, Ossa-Gallegos was removed to Mexico, his designated country of removal.

Ossa-Gallegos unlawfully returned to the United States in 1999. He sought employment, obtained a driver's license using his actual name, and paid his federal income taxes. In March of 2004, Ossa-Gallegos, his wife, and his daughter were walking in a residential neighborhood placing advertisements for his lawn business into mailboxes. A concerned neighbor called the police, which led to Ossa-Gallegos's arrest for being a previously deported alien. Ossa-Gallegos asserts that he did not intend to break the law when he opened the mailboxes, but was simply trying to attract customers for his business.

In December of 2004, Ossa-Gallegos pled guilty to a one-count indictment that charged him with illegal reentry after having been previously deported for committing an aggravated felony, a violation of 8 U.S.C. § 1326(b)(2). Ossa-Gallegos was sentenced after the Sentencing Guidelines were declared no longer mandatory by the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005). He admitted that his prior sexual-assault conviction constituted an aggravated felony, but made no other admissions about the nature of that conviction. The district court concluded that the conviction constitutes a crime of violence within the meaning of § 2L1.2(B)(1)(A) of the Guidelines, and therefore added 16 levels to Ossa-Gallegos's offense level in computing his Guidelines sentencing range. On appeal, Ossa-Gallegos does not challenge the district court's interpretation of the Guidelines in enhancing his sentence; he instead challenges the district court's authority to engage in factfinding regarding the nature of his prior aggravated felony.

The district court permitted Ossa-Gallegos a three-level reduction for acceptance of responsibility. Although the Guidelines range applicable to his offense was 41 to 51 months after the reduction, Ossa-Gallegos was further granted a two-level downward departure based on the aberrational nature of his prior crime in comparison with his law-abiding conduct since returning to the United States. Moreover, Ossa-Gallegos had not intended to break the law when he advertised his lawn business, and the district court found that he was unlikely to commit another crime.

In addition, the district court examined statistics regarding the average sentence of aliens convicted of illegal reentry in other parts of the country that employ "fast-track" procedures to process such convictions. Special approval must be given by the United States Attorney General for a state to participate in a fast-track program, so not every defendant is afforded this opportunity. The sentences in fast-track jurisdictions tend to be lower because, in exchange for an alien agreeing to waive his or her right to appeal, collaterally attack the conviction, or file certain motions, a four-

level reduction may be applied to the Guidelines sentence. The district court's two-level reduction that resulted in a 33-month sentence was partially based on its concerns about the "equality of justice when sentences vary for people based on where they are sentenced."

On appeal, Ossa-Gallegos argues that the district court's 16-level enhancement violated his Sixth Amendment rights because "he did not admit to any facts that would establish that his felony constitutes a 'crime of violence' for purposes of the enhancement." Without this enhancement, Ossa-Gallegos's Guidelines sentencing range would have been 15 to 21 months. Ossa-Gallegos also contends that his sentence was unreasonable in light of the factors set forth 18 U.S.C. § 3553(a), and that the district court erred in tolling his term of supervised release during the time that he remains outside of the United States.

## II.  ANALYSIS

### A.    Standard of review

We review de novo the district court's application of the Sentencing Guidelines. *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir. 2002). When a defendant challenges a district court's sentence pursuant to 18 U.S.C. § 3553(a), the sentence is reviewed for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). Reasonableness review requires this court to consider "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Id.*

### B.    Classification of Ossa-Gallegos's prior felony as violent

Ossa-Gallegos first argues that the district court exceeded its constitutional authority under the Sixth Amendment when it imposed "an enhancement based on facts not admitted by him and not found by a jury." He acknowledges, however, that the line of cases beginning with *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), permits factfinding by the court regarding the nature of a prior conviction. But he wishes to preserve the issue in the event that the Supreme Court reconsiders *Almendarez-Torres*. By Ossa-Gallegos's own admission, the district court's classification of his prior sexual-assault conviction as violent does not violate his Sixth-Amendment rights under the current state of the law. *See United States v. Richardson*, 437 F.3d 550, 555 (6th Cir. 2006) (holding that "controlling law, both before and after *Booker*, counsels that a judge can make factual findings about a defendant's prior convictions without implicating the Sixth Amendment"). The 16-level enhancement under the Guidelines, therefore, does not constitute constitutional error.

### C.    Reasonableness review

Ossa-Gallegos next argues that the district court's sentence is "manifestly unreasonable in light of the factors evaluated in reaching its final decision." He specifically argues that (1) a two-level departure does not entirely eliminate the disparity between his sentence and that of defendants with similar criminal histories in fast-track jurisdictions, (2) the district court was not concerned with any recidivism by Ossa-Gallegos, and (3) the 16-level enhancement is unduly harsh in light of the exemplary life that Ossa-Gallegos has lived since returning to the United States.

In determining the particular sentence to be imposed, the key portions of 18 U.S.C. § 3553(a) require the courts to consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed--

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for--

(A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

. . .

(5)     any pertinent policy statement–

. . .

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

The district court carefully considered the arguably "harsh" 16-level enhancement for Ossa-Gallegos's prior sexual-assault conviction and the fact that it occurred a decade ago. It also listened to testimony from friends and relatives, including Ossa-Gallegos's pastor, regarding Ossa-Gallegos's positive contributions to the community. The court further noted that Ossa-Gallegos has "an understanding and appreciation of the laws of this country . . . and he's pledged not to break the law again."

Finally, the court considered statistics regarding similarly situated defendants who are convicted in districts that employ a fast-track procedure. This procedure requires that a defendant enter into a plea bargain with the government and forfeit the right to appeal or collaterally attack the conviction in exchange for a maximum four-level sentence reduction. An empirical study cited by Ossa-Gallegos demonstrates that, in three fast-track districts, defendants with five prior convictions and two prior deportations received an average sentence of 32 months. *See* Linda Drazga Maxfield & Keri Burchfield, *Immigration Offenses Involving Unlawful Entry: Is Federal Practice Comparable Across Districts?*, 14 Fed. Sent. R. 260, Mar.-Apr. 2002. This average sentence is shorter than the one Ossa-Gallegos received after the two-level reduction, even though he has only one prior conviction and one prior deportation. As a result, Ossa-Gallegos argues that his sentence does not "reasonably correlate to the [district] court's express recognition" of the § 3553(a) factors.

"A prime objective of the Sentencing Guidelines was to eliminate or, at least reduce, disparity in the sentencing of similarly situated defendants." *United States v. Paster*, 173 F.3d 206, 220 (3d Cir. 1999) (citations omitted). Although the district court did not entirely eliminate the disparity between Ossa-Gallegos's sentence and the sentences of defendants with similar criminal histories in fast-track jurisdictions, its two-level downward departure was intended to reduce this disparity. The defendants in fast-track districts also give up their right to challenge their conviction in order to qualify for the four-level downward departure, a right that Ossa-Gallegos has retained. Ossa-Gallegos is therefore not similarly situated to these defendants, and "Congress seems to have endorsed at least some degree of disparity by expressly authorizing larger downward departures for

defendants in 'fast track' districts." *United States v. Montes-Pineda*, 445 F.3d 375, 379-80 (4th Cir. 2006).

Finally, avoiding nationwide disparities in sentencing is only one factor to be considered under § 3553(a). *United States v. Martinez-Martinez*, 2006 WL 722140, at \*3 (7th Cir. March 23, 2006) ("That some courts have chosen to avoid disparity does not mean that all district courts are compelled to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable."). The district court in the present case considered several other factors and, as a result, reduced Ossa-Gallegos's sentence from the initial Guidlines range. We conclude that this reduction was reasonable.

**D.     Tolling of supervised release**

Finally, Ossa-Gallegos challenges the district court's authority to toll the period of supervised release during the time that he remains outside of the United States. Although Ossa-Gallegos recognizes that the Sixth Circuit in *United States v. Isong*, 111 F.3d 428 (6th Cir. 1997), held that the period of a deported alien's supervised release may be tolled until he or she returns to this country, three circuits have since rejected that holding. *See United States v. Okoko*, 365 F.3d 962 (11th Cir. 2004); *United States v. Juan-Manuel*, 222 F.3d 480 (8th Cir. 2000); *United States v. Balogun*, 146 F.3d 141 (2d Cir. 1998). Ossa-Gallegos therefore argues that the present case should serve as a vehicle for the reconsideration of *Isong* through en banc review.

In addition to specific, enumerated conditions that courts must place on supervised release, 18 U.S.C. § 3583(d) permits a district court to impose "any other condition it considers to be appropriate" so long as the condition is reasonably related to correctional or rehabilitative purposes. The majority in *Isong* concluded that the tolling of a deported alien's period of supervised release is "reasonably related" to rehabilitative purposes because aliens will generally not be supervised while in their country of removal. 111 F.3d at 431. Tolling of supervised release, according to the majority, is "an appropriate way to make supervised release meaningful for defendants who are going to be deported." *Id.*

In dissent, Judge Moore argued that tolling is not a reasonable condition of supervised release under 18 U.S.C. § 3583(d). The dissent relied on the explicit statutory provision that "the term of supervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e). In addition, the only statutory provision concerning the tolling of supervised release states that "supervised release does not run during any period in which the person is imprisoned . . . unless the imprisonment is for a period of less than 30 consecutive days." *Id.* The dissent cited the maxim of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) for the proposition that Congress intended for a defendant's incarceration to be the sole instance when tolling of supervised release is permitted. 111 F.3d at 432 (Moore, J., dissenting). Finally, the dissent reasoned that because 18 U.S.C. § 3583(d) authorizes the sentencing court to order deportation as a condition of supervised release, the statutory scheme envisions the period of supervised release running during the alien's absence from the United States. *Id.*

The three other circuits to address this issue since *Isong* have all rejected its holding. They have relied on the reasons articulated by the dissent in *Isong*, in addition to concluding that the term "any other condition" in § 3583(d) should be limited to "requirements that the defendant himself do or refrain from doing specified acts." *Balogun*, 146 F.3d at 145. "Therefore, tolling, which relates to the timing of the supervised release rather than the conduct of the defendant, should not be viewed as a condition of the release because it relates to something beyond the control of the defendant and is substantively different from all of the other conditions expressly provided for under § 3583(d) and the Sentencing Guidelines." *Okoko*, 365 F.3d at 966 (citation and quotation marks omitted).

Notwithstanding the weight of authority from these other circuits and the strength of the dissent in *Isong*, we are bound by this circuit's holding in that case. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") Under the present state of Sixth Circuit law, therefore, Ossa-Gallegos will face a term of supervised release no matter how long he has been outside of the United States if and when he receives permission to reenter. Ossa-Gallegos, of course, is free to seek en banc review of this case if he so desires.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.