NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0280n.06

No. 21-3831

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 13, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JASON LITTLE, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: GIBBONS, ROGERS, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Jason Little illegally reentered the United States after he had been removed, in violation of 8 U.S.C. § 1326(a). His first removal occurred when he was a minor, and he returned to the United States to escape violence. Given these mitigating factors, the district court imposed a term of five years' probation instead of a term of imprisonment. Little claims that even this probationary sentence was unreasonably excessive in light of his pending removal. But the district court thoroughly justified its decision under the governing sentencing factors. And nothing in the probation or immigration laws prohibits a court from imposing probation on a defendant who is subject to a removal order. We thus affirm Little's sentence.

I

Little had a difficult childhood. Born in Jamaica, he never knew his father and had almost no relationship with his mother. When he was 15 years old, he testified at trial, his mother took

him on a flight without telling him where they were going. They arrived in the Bahamas and got smuggled into the United States on a boat that landed in Florida. (According to his presentence report, he later told a probation officer that he came to the United States earlier, when he was 11.) Little did not speak English well and did not know that he was entering the United States unlawfully. Within months, his mother traveled with him to Cleveland and abandoned him there. He has not seen her since. Little lived for months going "from house to house" before immigration authorities picked him up. Trial Tr., R.52, PageID 614–15. His immigration records suggested that the police found him in a "drug house with guns, cash, and weapons," but the district court excluded this evidence from trial as he was never charged with a crime. INS Memo, R.36-7, PageID 241.

Federal immigration authorities detained him for several months. They placed him in removal proceedings during this detention. In 1997, an immigration judge ordered the government to remove a then-17-year-old Little to Jamaica. In the spring of the next year, the government paid for his commercial flight back to that country.

As Little would later recall to a probation officer, he reconnected with his two siblings when he returned to Jamaica. Unfortunately, one of those siblings was subsequently shot and killed, purportedly due to his sexual orientation. Little was also shot in the leg during this violence. Little feared for his safety in Jamaica and spent much of his time in hiding.

He eventually returned to northeast Ohio in mid-2020. Little's girlfriend told a probation officer that he had met her online while still in Jamaica and began to live with her when he came back to Ohio. Little used someone else's driver's license to obtain work as a cook at a local restaurant.

That December, police arrested Little in Parma, Ohio. According to his presentence report, he attempted to obtain Oxycodone by using a fake prescription. A responding officer asked for Little's name and identification. To hide his identity, Little initially said that he was the person listed on his false driver's license. But police records showed that this person was incarcerated (and Little could not pronounce his last name). Little thus quickly admitted to his true identity.

A detective with the Parma Police Department interviewed him. Little confessed to using the false driver's license. He also acknowledged that his true name was Jason Little and that he had come to this country illegally from Jamaica. Little told the detective—falsely, according to Little's later trial testimony—that he had returned to the United States back in 2015.

The detective notified federal immigration authorities that he might have someone in custody who was not lawfully in the United States. A federal officer identified Little's name in an immigration database. He then reinterviewed Little, who admitted again that he was here illegally. Little's fingerprints also matched those taken from him in 1998 before he returned to Jamaica.

A grand jury indicted Little for illegally reentering the United States after a prior removal, in violation of 8 U.S.C. § 1326(a). Little stood trial. He testified that he had not realized that an immigration judge had ordered him removed when he was a child. He also suggested that someone had forged his signature on documents explaining his rights back then. Disbelieving Little, a jury convicted him.

At sentencing, the district court calculated Little's guidelines range as zero to six months' imprisonment. The court opted not to impose a term of imprisonment, sentencing him instead to a five-year term of probation. It also ordered him to surrender to immigration authorities for potential deportation.

II

On appeal, Little challenges his five-year probation term as substantively unreasonable. Like the statute governing imprisonment, the statute governing probation instructs courts to look to the sentencing factors in 18 U.S.C. § 3553(a) when deciding on the propriety of a probation sentence and on the length of a probation term. *Compare* 18 U.S.C. § 3562(a) (probation), *with id.* § 3582(a) (imprisonment). A substantive-reasonableness claim like Little's alleges that the district court imposed an excessive sentence when measured against these § 3553(a) factors. *See United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019).

For several reasons, Little faces an uphill battle in proving his claim. Even when a court imposes a lengthy term of imprisonment, we review its sentence under a "highly deferential" standard of review. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A defendant must show that the district court abused the significant discretion that our sentencing scheme places in it. *See Lynde*, 926 F.3d at 279 (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).

In Little's case, though, the court chose a term of probation, not imprisonment. Unlike our ubiquitous caselaw addressing substantive-reasonableness challenges to prison sentences, we have very few cases raising this type of challenge in the probation context. In fact, Little does not cite a single case in which an appellate court has found a probation term to be substantively excessive. More commonly, the government is the party complaining that such a sentence is too *low*. *Cf. United States v. Wilson*, 757 F. App'x 473, 475 (6th Cir. 2018); *United States v. Carson*, 560 F.3d 566, 587, 590–91 (6th Cir. 2009); *United States v. Hunt*, 521 F.3d 636, 649–50 (6th Cir. 2008); *United States v. Fuson*, 215 F. App'x 468, 475 (6th Cir. 2007). Little's trial counsel even advocated for "a period of probation" during the sentencing hearing. Sent. Tr., R.59, PageID 802.

4

Lastly, Little's probation term triggers an appellate presumption of reasonableness because it falls on the low end of his guidelines range. *Lynde*, 926 F.3d at 279. An illegal-reentry offense carries a statutory-maximum sentence of two years' imprisonment, 8 U.S.C. § 1326(a), making it a Class E felony, 18 U.S.C. § 3559(a)(5). Under the sentencing laws, this classification generally gives a court discretion to impose probation rather than imprisonment. *See id.* § 3561(a). In Little's case, a term of probation also fell within his guidelines range because the range's minimum prison term was zero months. *See* U.S.S.G. § 5B1.1(a)(1) & cmt. n.1(A). His guidelines range for any such term was "at least one year but not more than five years" of probation. *Id.* § 5B1.2(a)(1).

When measured against our deferential standard of review, the district court's justifications for its sentence reasonably balanced the relevant sentencing factors. The court properly started by identifying the guidelines range of zero to six months' imprisonment—a range that included a probation option. *See* 18 U.S.C. § 3553(a)(4)(A). It then discussed "the nature and circumstances" of Little's crime and his "history and characteristics." *Id.* § 3553(a)(1). The court highlighted, among other things, that Little had been a child when he first came to the United States and that he had left Jamaica a second time because of threats of violence. It also described Little's history with drugs and his girlfriend's statements to the probation officer, both of which led the court to take account of Little's need for substance-abuse and mental-health treatment. Even though Little's offense was "not the most serious offense," the court next recognized the need to promote respect for the law and to deter future illegal reentries. Sent. Tr., R.59, PageID 806; *see* 18 U.S.C. § 3553(a)(2). The district court thus adequately addressed all applicable sentencing factors. *See id.* § 3562(a). In the end, moreover, it gave Little exactly what he requested: probation.

Little's responses lack merit. He first argues that a combination of a five-year term of probation with the condition that he surrender to immigration authorities effectively banishes him

5

"to a life forever outside of the United States." Appellant's Br. 8. He adds that the "authorities" will likely deny his "future attempt[s]" to enter the United States lawfully. *Id.* at 9. We fail to see how this argument relates to any § 3553(a) factor. And it was Little's decision to break the law by reentering the United States—not the court's decision to impose probation—that will make it more difficult for him to return to this country down the road. *See* 8 U.S.C. § 1182(a)(9)(A).

If Little believes that district courts may not require immigrants to surrender to authorities as a condition of probation, he points to nothing in the probation or immigration laws that would bar such a condition. The condition fits comfortably with the probation statute's catch-all clause that allows a court to impose any other condition it believes necessary. 18 U.S.C. § 3563(b)(22). This statute also permits the court *itself* to order an immigrant's removal as a condition of probation in some circumstances, which shows that a sentence of probation does not inherently contradict an order that the defendant be removed from the country. *Id.* § 3563(b)(21). Such a condition also follows from the immigration laws, which require the government to remove immigrants who illegally reenter the country. *See* 8 U.S.C. § 1231(a)(5). And while the immigration laws require authorities to delay the removal of an immigrant who is serving a term of imprisonment, they note that a "probation" term "is not a reason to defer removal." *Id.* § 1231(a)(4)(A).

Similarly, nothing in the Sentencing Guidelines bars the district court's probation sentence. To be sure, the supervised-release guideline does suggest that a sentencing court "ordinarily should not impose a term of supervised release" if the court has discretion over such a sentence and the government will likely remove the defendant from the country when a prison term ends. U.S.S.G. § 5D1.1(c). But "ordinarily" does not mean "never." *See, e.g.*, *United States v. Castro-Verdugo*, 750 F.3d 1065, 1072 (9th Cir. 2014); *United States v. Dominguez-Alvarado*, 695 F.3d 324, 328–30 (5th Cir. 2012). More fundamentally, the probation guideline contains no similar presumptive

limit on a term of probation for defendants who will likely be removed. *See* U.S.S.G § 5B1.1. The possibility of removal thus provides even less of a basis to decline a probation sentence.

Even so, Little responds, a term of probation will not serve a rehabilitative purpose because, once he is removed, a probation officer will not ensure that he attends mental-health counseling. But there is no set time when the government will remove Little, and he has filed an application for relief from removal. The district court also did not delay his probationary term, so it began on the day the court issued the sentence. *See* 18 U.S.C. § 3564(a). As long as Little remains in the United States, then, he will receive the mental-health treatment that the court imposed as a condition of probation. Besides, the district court did not seek to serve only rehabilitative purposes. It also sought to serve deterrence purposes. *See id.* § 3553(a)(2)(B). If Little is removed, for example, his conditions of probation prohibit him from returning. So the sentence provides extra deterrence against Little reentering the country unlawfully apart from the general criminal ban on those reentries. 8 U.S.C. § 1326(a); *see Dominguez-Alvarado*, 695 F.3d at 329–30; *cf. United States v. Ossa-Gallegos*, 491 F.3d 537, 543–44 (6th Cir. 2007) (en banc).

Citing *Tapia v. United States*, 564 U.S. 319 (2011), Little lastly argues the district court unlawfully chose a five-year maximum term of probation because of his need to receive mental-health and substance-abuse treatment. This argument has a number of flaws. As an initial matter, Little has forfeited the argument by failing to raise it until his reply brief. *See, e.g.*, *United States v. Presley*, 18 F.4th 899, 902 n.2 (6th Cir. 2021); *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006). Regardless, *Tapia* addressed whether a court could choose a term of *imprisonment* (or increase such a term) for rehabilitative reasons. 564 U.S. at 321. The Supreme Court held that a court could not do so because the statute governing imprisonment provided that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a); *see*

*Tapia*, 564 U.S. at 326–32.  The statute governing probation contains no similar language.  *See* 18 U.S.C. § 3562(a).  Because the statutory text expressly includes this restriction for one kind of sentence (imprisonment) but not for another (probation), any reasonable person reading this sentencing scheme would assume that the restriction does not apply to the latter type of sentence. *See Russello v. United States*, 464 U.S. 16, 23 (1983).  Indeed, *Tapia* itself recognized that a court may consider rehabilitation when determining whether to impose probation.  *See* 564 U.S. at 330. Finally, Little identifies nothing suggesting that the district court relied on rehabilitation concerns when choosing the maximum term of probation (as opposed to when choosing between probation and imprisonment).

We affirm.