*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

UNITED STATES OF AMERICA,

　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

RODERICK GOINS,

　　　　　　　*Defendant-Appellant.*

No. 07-3341

>

————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00379—James S. Gwin, District Judge.

Submitted: January 29, 2008

Decided and Filed: February 13, 2008

Before: MERRITT, DAUGHTREY, and MOORE, Circuit Judges.

————————

## COUNSEL

**ON BRIEF:** Debra K. Migdal, FEDERAL PUBLIC DEFENDER'S OFFICE, Akron, Ohio, for
Appellant. Robert J. Patton, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for
Appellee.

————————

## OPINION

————————

KAREN NELSON MOORE, Circuit Judge. In this case we are asked to decide as a matter
of first impression whether pretrial detention with respect to an indictment that later yields a
conviction tolls the running of a period of supervised release under 18 U.S.C. § 3624. This is a
difficult and close case, but today we part ways with the Ninth Circuit and hold that when a
defendant is held for thirty days or longer in pretrial detention, and he is later convicted for the
offense for which he was held, and his pretrial detention is credited as time served toward his
sentence, then the pretrial detention is "in connection with" a conviction and tolls the period of
supervised release under § 3624.

### I. BACKGROUND

Because Roderick Goins's ("Goins") appeal raises only a legal question, we need simply
provide a brief description of the factual and procedural basis for his appeal. As far as this case is
concerned, Goins's legal troubles began on January 28, 1997, when the United States charged him
in the Western District of Kentucky with bank fraud and loan fraud in violation of 18 U.S.C.

§§ 1344, 1014. On February 18, 1997, Goins pleaded guilty, and on May 15, 1997, the district court entered judgment sentencing Goins to one month of imprisonment for every count with terms to run concurrently; the district court also sentenced Goins to five years of supervised release.

After serving his one-month term of imprisonment, Goins requested that the U.S. District Court for the Western District of Kentucky transfer his supervision to the U.S. District Court for the Northern District of Ohio so that he could assist his father with his father's business. Goins's legal troubles, however, followed him to Ohio, and Goins was indicted in Cuyahoga County, Ohio, in October 1998. Rather than face trial, Goins absconded and stopped submitting monthly reports for his supervised release.

With Goins missing and in likely violation of the terms of his supervised release, the Northern District of Ohio requested jurisdiction over Goins's case. In August 2000, the Western District of Kentucky transferred jurisdiction over Goins to the Northern District of Ohio. Although jurisdiction was transferred, not all of the paperwork was sent; therefore, the Northern District of Ohio was apparently unaware that it had jurisdiction and that the Western District of Kentucky had failed to issue an arrest warrant.

While the two district courts were sorting out the jurisdictional situation, Goins continued to run afoul of the law. On December 18, 2000, Goins was arrested in Douglas County, Georgia, and on January 26, 2001, Goins was indicted. The fifteen-count indictment alleged, among other things, that Goins committed first- and second-degree forgery and identity fraud. After being held for sixty-three days, Goins posted bond on February 2, 2001, and was promptly released. Once again, Goins absconded and did not face those charges until January 2004.

Although Goins was apparently quite busy in Georgia, the Northern District of Ohio did not know of Goins's location between November 1998 and July 2002. It was at that point, in July 2002, when two events happened in quick succession. First, on July 6, 2002, Goins's supervised release was scheduled to expire. And second, the Northern District of Ohio and the Western District of Kentucky resolved their jurisdictional morass: on July 24, 2002, the Northern District of Ohio issued a warrant for Goins's arrest for possible violations of his supervised release.

Although he was in custody in Georgia beginning in 2004, Goins was not arrested for his possible supervised release violation until February 5, 2007. On that date, the U.S. District Court for the Middle District of Georgia transferred custody of Goins to the Northern District of Ohio.

After receiving briefs and hearing argument from both sides, the U.S. District Court for the Northern District of Ohio concluded that Goins had violated the terms of his supervised release and sentenced him to twenty-four months of imprisonment. At issue at the district-court hearing, and the sole issue before us, was whether the district court had jurisdiction to revoke Goins's supervised release. A court is authorized to revoke supervised release and "order the defendant to serve a term of imprisonment" after the period of supervised release has passed "if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation [of a condition of supervised release]." 18 U.S.C. § 3583(i). Because Goins's supervised release was scheduled to expire on July 6, 2002, and the Northern District of Ohio did not issue a warrant until July 24, 2002, the Northern District of Ohio did not issue a warrant until 18 days *after* Goins's supervised release was schedule to expire, and § 3583(i) would appear to deprive the district court of jurisdiction. However, the United States contended that Goins's supervised release did not actually end on July 6, 2002, because of the operation of 18 U.S.C. § 3624(e), which provides: "A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C. § 3624(e). According to the United States, Goins's sixty-

three days of pretrial detention for the Georgia offenses tolled Goins's period of supervised release under § 3624(e), thereby making the Northern District of Ohio's warrant timely.

The district court agreed with the government's tolling argument. The district court focused on two factors in making its determination: the length of Goins's detention and the fact that Goins was later convicted in Georgia of the crime for which he was detained. The district court believed that Goins's pretrial detention of sixty-three days triggered the statute:

> What's the difference, though, if . . . he's held more than 30 days, and then he makes bond, say on the 40th day, and he's given credit for the 40 days before making bond by the Douglas County court, hasn't he suffered an incarceration for more than 30 days and doesn't the . . . supervised release toll under the statute?

Joint Appendix ("J.A") at 83 (Mar. 14, 2007, Hr'g Tr. at 14:16-21). In addition, the district court concluded that the pretrial detention was "in connection with" a conviction because Georgia later convicted Goins. For those reasons, the district court concluded that it had jurisdiction to revoke Goins's supervised release; upon finding numerous violations of his supervised-release conditions, the district court sentenced Goins to twenty-four months of imprisonment. Goins filed a timely appeal.

## II. ANALYSIS

### A. Standard of Review

The parties are in agreement that "[t]he question of whether a district court has jurisdiction to rule upon a petition to revoke a defendant's supervised release after the term of supervised release is alleged to have ended is a question of law that is subject to *de novo* review." *United States v. Sturdivant*, No. 98-6256, 1999 WL 1204689, at *2 (6th Cir. Nov. 30, 1999) (unpublished). De novo review in this circumstance is consistent with the law of other circuits. *See United States v. Jackson*, 426 F.3d 301, 304 & n.3 (5th Cir. 2005); *United States v. Morales-Alejo*, 193 F.3d 1102, 1104 (9th Cir. 1999) ("We review *de novo* whether the district court had jurisdiction to revoke Morales-Alejo's term of supervised release."); *United States v. Morales*, 45 F.3d 693, 696 (2d Cir. 1995) ("The question before us is whether the district court had jurisdiction to rule upon Morales's alleged violations after his supervised release period was supposed to end. This is a question of law subject to de novo review.").

### B. Interpreting § 3624

Only the Ninth Circuit has addressed the exact issue of whether pretrial detention counts as "imprisoned in connection with a conviction" and, therefore, tolls the period of supervised release. The Ninth Circuit concluded that pretrial detention did not trigger a tolling of the period of supervised release:

> A plain reading of this language [of § 3624(e)] suggests that there must be an imprisonment resulting from or otherwise triggered by a criminal conviction. Pretrial detention does not fit this definition, because a person in pretrial detention has not yet been convicted and might never be convicted.

*Morales-Alejo*, 193 F.3d at 1105. As the above-quoted language indicates, the Ninth Circuit's primary ground for its holding was that it believed that the phrase "in connection with a conviction" means that a conviction must occur *before* any confinement can count as imprisonment. To bolster this view, the Ninth Circuit attempted to distinguish between the words "imprisonment" and "detention," claiming that Congress uses "imprisonment" only "to refer to a penalty or sentence,"

whereas "'detention' is used to describe a mechanism to insure a defendant's appearance and the safety of the community." *Id.*

We respectfully decline to adopt the Ninth Circuit's interpretation. When considering the meaning of § 3624(e), we must apply the plain meaning of the statute if the statute is not ambiguous. *United States v. Palacios-Suarez*, 418 F.3d 692, 697 (6th Cir. 2005). The Supreme Court, in *United States v. Johnson*, 529 U.S. 53 (2000), has previously considered the meaning of the word "release" in § 3624(e), and the Court's approach guides ours. In *Johnson*, the Supreme Court held that a defendant whose prison term was shortened by a favorable Supreme Court ruling, such that he had already served two-and-a-half years too many, could not claim that his term of supervised release started running at the time when he should have been released from prison. *See id.* at 54. In analyzing the statute, the Supreme Court stated: "The quoted language directs that a supervised release term does not commence until an individual 'is released from imprisonment.' There can be little question about the meaning of the word 'release' in the context of imprisonment." *Id.* at 57. Furthermore, the Supreme Court held that the language did not permit consideration of "some fictitious or constructive earlier time," but instead required application of a "strict temporal interpretation." *Id.* Thus, the Supreme Court has steadfastly directed us to apply the plain meaning of § 3624(e).

We have similarly bound ourselves to a close reading of the statute when interpreting the related provisions in 18 U.S.C. § 3583. In our recent en banc opinion, we rejected significant policy arguments in favor of the plain meaning that the statute provided:

> The parties raised a number of policy-based arguments in support of their respective positions. These arguments centered around whether the goals of supervised release are better realized through tolling and whether tolling provides an unjustified administrative burden on the United States Probation Office. We think it best to leave the resolution of these policy questions to Congress. If Congress determines that the goals of supervised release are better realized by giving district courts discretion to issue these types of tolling orders, then Congress is free to amend the legislation to provide district courts this authority.

*United States v. Ossa-Gallegos*, 491 F.3d 537, 544-45 (6th Cir. 2007) (en banc) (concluding that tolling of supervised release is not a "condition" of supervised release under § 3583(d)). It is apparent, therefore, that we must apply the plain meaning of § 3624, even in the face of substantial policy arguments.

With this in mind, we first note that never before have we clearly addressed the question of whether "in connection with a conviction" in § 3624(e) requires a preceding conviction or whether pretrial detention before a conviction might also be "in connection with a conviction." The only attempt that we have made previously to interpret this provision was in an unpublished opinion addressing whether time served pursuant to a state parole revocation counted as an imprisonment "in connection with a conviction." In *Sturdivant* we concluded that it did. We reached that holding by suggesting that the reason why Congress said "in connection with" rather than simply "for" was specifically to "cover the scenario of a revocation of parole." *Sturdivant*, 1999 WL 1204689, at *2. Although *Sturdivant* might seem to indicate that "in connection with a conviction" merely expands the statute to cover both terms of imprisonment that flow directly from a conviction for substantive offenses and terms of imprisonment that are reinstated after a conviction for a parole violation, nothing in *Sturdivant* indicates that "in connection with a conviction" could not also include pretrial detention. In any event, *Sturdivant* is not precedential and did not resolve the issue now before us.

Similarly, the Supreme Court also has never addressed the exact question before us. In *Johnson* the Supreme Court focused primarily on the first two sentences in § 3624(e) and not the

third sentence, which is at issue in this case. *Johnson*, 529 U.S. at 57-58. The Court, however, did reference the third sentence:

> The statute does provide for concurrent running of supervised release in specific cases. After the operative phrase "released from imprisonment," § 3624(e) requires the concurrent running of a term of supervised release with terms of probation, parole, or with other, separate terms of supervised release. The statute instructs that concurrency is permitted not for prison sentences but only for those other types of sentences given specific mention. The next sentence in the statute does address a prison term and does allow concurrent counting, but only for prison terms less than 30 days in length. When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.

*Id.* at 57-58. By phrasing its discussion in terms of an "exception," the Court may be suggesting that the default rule is that the period of supervised release is always tolled while a defendant is imprisoned, with only limited exceptions. That said, the Court's use of the phrase "prison term" could mean that § 3624(e) applies only to those who have been convicted and sentenced to prison, or it could simply mean that the Court was ruling on only the limited question of whether all prison terms of longer than thirty days fall under the statute while not even reaching the question of whether pretrial detention would come within § 3624(e). The Court's mention of this particular language, however, did not resolve the issue before us. Thus, we must engage in our own review of § 3624(e).

As previously discussed, the Ninth Circuit's primary ground for its conclusion that § 3624(e) does not toll the supervised-release period during pretrial detentions was its distinction between "imprisonment" and "detention." *See Morales-Alejo*, 193 F.3d at 1105. If the Ninth Circuit were correct that Congress uses "imprisonment" only when it wishes to refer to a confinement that is the result of a penalty or sentence, then the phrase "in connection with a conviction" becomes entirely superfluous; "imprisonment," according to the Ninth Circuit's definition, would already mean that the confinement is the result of a conviction. We are, therefore, hesitant to credit the Ninth Circuit's distinction between imprisonment and detention because "[w]hen interpreting the plain language of a statute, we 'mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *United States v. Ninety-Three Firearms*, 330 F.3d 414, 420 (6th Cir. 2003) (second alteration in original) (quoting *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000)).

Furthermore, we conclude that the plain meaning of "imprison" calls into doubt the Ninth Circuit's conclusion that "imprison" inherently refers to a penalty or sentence. It seems that "imprison" includes not only confinements as a result of a conviction, but any time the state detains an individual. The Oxford English Dictionary defines "imprison" as "[t]o put into prison, to confine in a prison or other place of confinement; to detain in custody, to keep in close confinement; to incarcerate." OXFORD ENGLISH DICTIONARY (2d ed. 1989). In this definition, "detain in custody," *id.*, would certainly encompass pretrial detention. Similarly, Miriam Webster's Collegiate Dictionary defines "imprison" as "to put in or as if in prison: CONFINE." MIRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2005). Black's Law Dictionary is less clear on the matter. It defines "imprison" as "[t]o confine (a person) in prison," and defines "prison" as "[a] state or federal facility of confinement for *convicted* criminals." BLACK'S LAW DICTIONARY (8th ed. 2004) (emphasis added). Somewhat contradictorily, however, Black's Law Dictionary defines "imprisonment" as "1. The act of confining a person, esp. in a prison . . . . 2. The state of being confined; a period of confinement . . . ." *Id.* Although Black's Law Dictionary's definition of "imprison" aligns more with the Ninth Circuit's interpretation, under Black's Law Dictionary's

definition of "imprisonment," pretrial detention is just as much "the state of being confined," *id.*, as is post-trial incarceration. Although Black's Law Dictionary's definition of "imprison" does not support our conclusion, it appears that the one contradictory definition is the exception to an otherwise clear rule that associates "imprison" with "confine," and "confine" encompasses pretrial detention.

Because Congress's use of the word "imprisoned" does not exclude pretrial detention from the scope of § 3624(e), we must decide whether "imprisoned in connection with a conviction" includes those held in pretrial detention. We conclude that the phrase "imprisoned in connection with a conviction" plainly includes persons whose pretrial detentions are later connected to a conviction. Support for this conclusion is found in 18 U.S.C. § 3585(b), which provides for "credit toward the service of a term of imprisonment for any time [the defendant] has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed . . . ." 18 U.S.C. § 3585(b). This statute itself creates a connection between pretrial detention and a later conviction. Thus, where credit is given for pretrial detention, the pretrial detention is clearly "in connection with a conviction."

The Ninth Circuit, however, disagrees with our conclusion. The Ninth Circuit observes that § 3585(b) operates only once the detainee is convicted; therefore, a connection between pretrial detention and a conviction can only be observed well after the pretrial detention has ended. *See Morales-Alejo*, 193 F.3d at 1105. Based upon that, the Ninth Circuit concludes that "[t]his proposed construction is not supported by the statutory language, which gives no indication that Congress ever contemplated the type of backward-looking analysis suggested." *Id.* Although we agree that our interpretation does require a "backward-looking analysis," *id.*, we conclude that nothing in the statute suggests that only forward-looking analysis is appropriate. Instead, it appears that the phrase "imprisoned in connection with a conviction" eschews any temporal limitations.

To understand why "imprisoned in connection with a conviction" appears to lack any temporal limitation, it is instructive to consider Goins's claim that tolling for pretrial detention would violate the Supreme Court's "strict temporal" approach in *Johnson*. We reject Goins's temporal argument because Goins ignores what created the "strict temporal interpretation" for the Supreme Court: the specific language of the statute. The Supreme Court in *Johnson* found itself bound to a "strict temporal interpretation" because the statute itself used the phrase "on the day the person is released," a phrase that limited the court to a certain temporal perspective. § 3624(e); *Johnson*, 529 U.S. at 57. In stark contrast, the very next sentence in § 3624(e), "imprisoned in connection with a conviction," does not make reference to any temporal perspective. Thus, despite its backward-looking approach, a pretrial detention that leads to a conviction, and is later credited as time served, is "in connection with a conviction."[1]

The final reason offered by the Ninth Circuit in reaching the opposite conclusion than the one we reach today is that tolling periods of supervised release during pretrial detention, but only when that pretrial detention is later connected to a conviction, creates a potential problem for judges

---

[1] Both Goins and the government have advanced arguments regarding the applicability of the Fifth Circuit's case, *United States v. Jackson*, 426 F.3d 301 (5th Cir. 2005). In that case, the Fifth Circuit held that the period of supervised release was tolled under § 3624 when a felon returned to state prison for a parole violation, even when it was later determined that his parole revocation was unconstitutional. The Fifth Circuit based its conclusion on two grounds: first, relying on *Johnson*, the Fifth Circuit held that "the statute states no exceptions," and, therefore, the defendant's imprisonment, even if later found to be unlawful, still tolled his period of supervised release; second, the Fifth Circuit reasoned that the defendant could not be supervised by his probation officer while in prison. *See Jackson*, 426 F.3d at 304-05. Because we have already addressed our interpretation of § 3624(e), we find it unnecessary to analyze *Jackson*'s applicability, but it is worth noting that the Fifth Circuit's argument regarding the probation officer's ability to supervise the defendant was an argument that we rejected in *Ossa-Gallegos* when we were engaged in determining the plain meaning of another statutory provision. *Compare Jackson*, 426 F.3d at 305 *with Ossa-Gallegos*, 491 F.3d at 543-44.

seeking to establish whether they have jurisdiction to revoke supervised release. As the Ninth Circuit acknowledged, "A judge attempting to determine jurisdiction based upon tolling due to pretrial detention would be unable to make the required determination in any case in which a judgment of conviction had not yet been entered." *Morales-Alejo*, 193 F.3d at 1105 (footnote omitted). To avoid this problem, Goins advocates that we engage in a "strict temporal interpretation," *Johnson*, 529 U.S. at 57, and not link pretrial detention to uncertain future events.

We recognize that uncertainty may pose a real problem, yet we believe that the severity of this problem is likely overstated. The only time when such indeterminacy would exist is when a judge must determine whether jurisdiction for the revocation of supervised release exists and the defendant is between the period of his pretrial detention and the conclusion of his trial. In most cases, the Sixth Amendment and the Speedy Trial Act of 1974 would ensure that this zone of indeterminacy is quite short. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); 18 U.S.C. §§ 3161(b) (requiring the filing of an indictment or information within thirty days of arrest or summons); 3161(c)(1) (requiring commencement of the trial within seventy days from the later of the filing of the indictment or date of appearance). In the rare case where a judge finds herself in that zone of indeterminacy, there is no reason why the judge who is asked to determine jurisdiction over the revocation of supervised release could not continue the proceedings until a conviction or an acquittal is rendered in the other case. In Goins's case, however, such indeterminacy was never an issue; by the time the Northern District of Ohio was assessing its jurisdiction, Georgia had already convicted Goins and his pretrial detention was clearly in connection with a conviction.

Adoption of Goins's interpretation would reward him for absconding. Because the government does not argue that Goins's absconding itself tolled his period of supervised release, if we adopted Goins's interpretation, Goins will have evaded a violation of supervised release by virtue of the fact that he absconded so that Georgia could not convict him. Whether Goins's interpretation would create an incentive for other releasees to abscond is an open question. First, most absconders, by absconding and failing to report to their probation officers, would find themselves the subject of a warrant for arrest for a violation of the conditions of their supervised release. It is likely such a warrant would have been issued here had the Northern District of Ohio and the Western District of Kentucky not so completely failed in their monitoring of Goins. Thus, whether other releasees would be encouraged to abscond under Goins's interpretation would, in part, depend on how often such failures of monitoring occur. Second, Goins's interpretation would reward absconders if absconding does not, by itself, toll periods of supervised release. It is not clear whether absconding does toll the period of supervised release. The Ninth Circuit tolls periods of supervised release while a defendant is in fugitive status, *see United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992), but we could find no comparable case in the Sixth Circuit. Because the government in this case has not advocated tolling of the period of supervised release on the basis of absconding, we decline to address whether absconding can, by itself, trigger tolling. We emphasize, however, that adopting Goins's interpretation would reward him for absconding while requiring us to address these difficult questions; in contrast, our interpretation, despite its indeterminacy, creates only a rare and remediable problem.

For these reasons, we hold that, pursuant to § 3624(e), pretrial detention lasting thirty or more days does toll the period of supervised release when the pretrial detention is later credited as time served in connection with a subsequent conviction. Once Goins was finally apprehended and convicted in Georgia, his sixty-three days of pretrial detention were credited as time served on his state sentence. Thus, the district court correctly concluded that his period of supervised release had tolled during the pretrial detention in connection with the Georgia conviction, and the Northern District of Ohio had jurisdiction to revoke his supervised release.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's revocation of Goins's supervised release.