**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0078n.06

No. 17-3732

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 15, 2018
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA, )
    )
    **Plaintiff-Appellee,** )    ON APPEAL FROM THE
    )    UNITED STATES DISTRICT
v. )    COURT FOR THE NORTHERN
    )    DISTRICT OF OHIO
JASON J. MONT, )
    )
    **Defendant-Appellant.** )    **OPINION**
    )

Before: MOORE, COOK, and McKEAGUE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Jason Mont appeals the district court's revocation of his term of supervised release, arguing that the district court lacked jurisdiction to impose the revocation because his term of supervised release had already expired. Because binding precedent instead makes clear that Mont's term of supervised release was paused by his imprisonment in connection with a new state conviction, we conclude that the district court did indeed have jurisdiction and thus **AFFIRM**.

**I. BACKGROUND**

Because Mont's challenge hinges on a few key dates, two sections of statutory text, and one case, we review the facts here only briefly. In December 2005, Mont was convicted of violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 18 U.S.C. § 922(g)(1), and sentenced to 120 months of imprisonment to be followed by five years of supervised release. R. 37 (2005 Crim. J. at 1–3) (Page ID #109–11). He appears to have been released from prison on March 6,

2012. *See* R. 90 (Supervision Report at 1) (Page ID #415); *see also* Inmate Locator, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (listing a release date of "03/06/2012" after a search for "Jason J. Mont"); Appellant's Br. at 4; Appellee's Br. at 4. His release from prison started the clock ticking on his five years of supervised release, *see* 18 U.S.C. § 3624(e)— a countdown slated to end on March 6, 2017.[1]

Unfortunately, that five-year period was not a smooth one for Mont. In January 2016, his probation officer submitted to the district court a violation report alleging that Mont had failed to comply with the terms of his supervised release in two ways: (1) by testing positive during two drug tests for controlled substances (Oxycodone and Oxymorphone) for which he lacked a prescription, and (2) by using some "unknown" liquid to try to pass two subsequent drug tests. R. 89 (First Violation Report at 1) (Page ID #411). Moreover, Mont's probation officer noted, Mont had been "secretly indicted by the Mahoning County Grand Jury on two counts of Trafficking in Marijuana" back in March 2015. *Id.* At the time of the probation officer's report, those state charges were still pending, and a jury trial was scheduled for March 14, 2016. *Id.* at 1–2 (Page ID #411–12). In light of the pending state-court case, the district judge declined to issue a warrant, and instead asked that the court "be notified of the resolution of the state charges." *Id.* at 4 (Page ID #414).

---

[1]Or possibly March 7, 2017. *Compare* R. 90 (Supervision Report at 1) (Page ID #415) (March 6), *with* R. 89 (First Violation Report at 1) (Page ID #411) (March 7), *and* R. 100 (Second Violation Report at 1) (Page ID #454) (same). But as the Government concedes, "[t]he one-day difference does not affect the outcome here." Appellee's Br. at 4 n.1. Both to give Mont the benefit of the ambiguity and because March 6 appears more accurate, we use that date here.

Mont's state jury trial ended up being postponed. R. 90 (Supervision Report at 1) (Page ID #415). Nevertheless, as his probation officer reported, Mont was arrested on June 1, 2016, as a result of a new secret indictment from Mahoning County, this one for "five counts of Trafficking in Cocaine." *Id.* He was "incarcerated in the Mahoning County Jail," *id.* at 2 (Page ID #416), and, as he concedes, remained in state custody going forward, *see* R. 100 (Second Violation Report at 2) (Page ID #455); *see also* Appellant's Br. at 6.[2]

In October 2016, Mont entered into a plea agreement with the Mahoning County prosecutors, pleaded guilty to some of his state court charges in exchange for a predetermined six-year sentence, R. 95-1 (Def.'s Mot. for Continuance, Ex. A) (Page ID #430–38), and filed a written admission in federal court acknowledging that he had violated the terms of his supervised release and requesting a hearing on the matter, R. 92 (Def.'s Admission) (Page ID #419). But Mont had not yet been officially sentenced for the new, state-court convictions. Though the district court initially set a November 2016 date for Mont's supervised-release-violation hearing, a flurry of continuances followed in both state and federal court. *See, e.g.*, R. 94 (Gov't's Mot. for Continuance at 1) (Page ID #424). Ultimately, on March 21, 2017, Mont was sentenced in

---

[2]Again, there is some minor confusion regarding the particular date. At Mont's revocation hearing in federal court, his probation officer testified that Mont "went into custody on May 26th, 2016, and he remained in custody to this date." R. 116 (Violation Hr'g Tr. at 7) (Page ID #490). But the May 26 date does not appear to be otherwise reflected in the district-court record, and Mont instead cites the June 1 date, *see* Appellant's Br. at 6. (For its part, the Government repeatedly gives the operative date as "March 26, 2016." Appellee's Br. at 5–6, 10, 14–15. That date, also not reflected in the record, is presumably an accidental misrendering of "May" from the probation officer's testimony.) Giving Mont the benefit of the doubt, we treat June 1, 2016, as the beginning of Mont's state imprisonment, noting that Mont's challenge does not hinge on this temporal difference either.

state court to a total of six years' imprisonment, encompassing multiple concurrent terms stemming from the various state charges on which he had been indicted and arrested. *See* R. 100 (Second Violation Report at 1) (Page ID #454). Importantly, Mont's state-court sentencing judge credited the roughly ten months that Mont had already been incarcerated pending a disposition as time served. *See State v. Mont*, Judgment, No. 16-CR-555, at 2 (Mahoning Cty. Ct. Com. Pl. Mar. 23, 2017); *State v. Mont*, Judgment, No. 15-CR-291, at 2 (Mahoning Cty. Ct. Com. Pl. Mar. 23, 2017).[3]

On March 30, 2017—now more than three weeks after Mont's term of supervised release had initially been set to expire—Mont's probation officer updated the district court regarding Mont's state-court convictions and sentences. R. 100 (Second Violation Report at 1) (Page ID #454) (same). The district court ordered the issuance of a warrant that same day, *id.* at 4 (Page ID #457); R. 101 (Arrest Warrant at 1) (Page ID #458), and set a supervised-release-violation hearing for June 28, 2017, R. 103 (Pet. for Writ of Habeas Corpus ad Prosequendum at 1) (Page ID #462).

Two days before that hearing, Mont's counsel filed a memorandum contending that "Mont's period of supervised release expired on March 6, 2017," and thus disputing the district court's jurisdiction to adjudicate his otherwise-admitted violation. R. 107 (Def.'s Violation Hr'g Mem. at 2) (Page ID #473). At the hearing, the district court addressed Mont's challenge and

---

[3]As the Government notes, Appellee's Br. at 15 n.2, "it is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (punctuation and citation removed). We do so here, where the relevant records were publicly available from the Mahoning County Courts, *see* CourtVIEW, MAHONING COUNTY COURTS, https://courts.mahoningcountyoh.gov/eservices/home.page.2.

"conclude[d] that [it did], in fact, have jurisdiction over this matter." *See* R. 116 (Violation Hr'g Tr. at 9) (Page ID #492). In explaining its conclusion, the district court first stated that it had "give[n] notice by way of a summons on November 1st of 2016 setting this for a supervised release violation hearing for November 9th of 2016." *Id.* at 7 (Page ID #490). The district court then made reference to 18 U.S.C. § 3583(i), stating that under that provision "a Court retains the power to impose a sanction for a supervised release violation beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising from its expiration."[4] *Id.* at 8–9 (Page ID #491–92). Though the district court acknowledged that, "if all things went as they should have gone, supervision would have expired on March 7th, 2017," the district court reasoned that the extra "time was, in fact, reasonably necessary because it was the actions of the defendant that caused the various extensions of time of having the supervised release violation hearing." *Id.* at 9 (Page ID #492).

The district court proceeded to sentence Mont to 42 months of imprisonment, to be served consecutively to Mont's imprisonment for his state-court convictions. *Id.* at 17 (Page ID #500). Mont timely appealed on the jurisdictional question.

---

[4]For maximal clarity, we note here that this expression of the statutory rule left off a key conditional phrase. In fact, a court's "power . . . to revoke a term of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before [that term's] expiration *if*, before [that term's] expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i) (emphasis added). As will be apparent, however, this accidental omission does not affect the outcome of this case.

## II.  DISCUSSION

### A.  Standard of Review

"We review de novo [a] district court's . . . determination that it had jurisdiction to revoke [a defendant's] supervised release." *United States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017).

### B.  The District Court's Jurisdiction

The math in this case is simple:  Mont's supervised-release clock was initially set at five years.  If it ticked its way down inexorably, then time would have expired on March 6, 2017, and the district court would have lacked jurisdiction to impose a violation at any later date.

But the clock's countdown was not inexorable.  Two statutory provisions explain (1) how time could have been extended and (2) how the clock could have been paused.  First, "[t]he power of the court to revoke a term of supervised release . . . *extends beyond the expiration of* the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if, before its expiration*, a warrant or summons has been issued on the basis of an allegation of such a violation."  18 U.S.C. § 3583(i) (emphases added).  That is how time could have been extended.  *See United States v. Ossa-Gallegos*, 491 F.3d 537, 543 n.5 (6th Cir. 2007) (en banc).  Second, while a "term of supervised release commences on the day the person is released from imprisonment," that term "*does not run* during any period in which the person is imprisoned *in connection with* a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."  18 U.S.C. § 3624(e) (emphases added).  That is how the clock could have been paused.

6

This second, clock-pausing provision presents an interpretive riddle that we took on in *United States v. Goins*, 516 F.3d 416 (6th Cir. 2008): does thirty days or more of pretrial detention for a charge that results in (and is credited to) a conviction count as "imprisonment in connection with" that conviction? If so, we would understand a defendant's supervised-release clock as having been stopped during any days that defendant spent incarcerated after an indictment, at least so long as (1) that indictment resulted in a conviction and (2) that incarceration was credited as time served for the conviction. And that, in *Goins*, is what we held: "that [1] when a defendant is held for thirty days or longer in pretrial detention, and [2] he is later convicted for the offense for which he was held, and [3] his pretrial detention is credited as time served toward his sentence, then the pretrial detention is 'in connection with' a conviction and tolls the period of supervised release under § 3624." *Id.* at 417. And we explicitly rejected any "temporal limitations" for this rule, finding none in the statute's text and thus acknowledging that our rule might "require a 'backward-looking analysis'" at times. *Id.* at 422 (quoting *United States v. Morales-Alejo*, 193 F.3d 1102, 1104 (9th Cir. 1999)).

As may be clear by now, *Goins* resolves this case.[5] Mont was held for roughly ten months in pretrial detention. *See* R. 90 (Supervision Report at 1–2) (Page ID #415–16); R. 100

---

[5]Because it does, we need not consider the Government's alternate argument for affirmance: that the district "court's issuance of a summons before [Mont's] supervision expired" triggered an extension under § 3583(i). Appellee's Br. at 13. While it is true that the district court said during Mont's hearing that it had issued such a summons in November 2016, R. 116 (Violation Hr'g Tr. at 7) (Page ID #490), Mont contends "that there is no evidence on the record which indicates that the district court actually filed" such a summons, Reply Br. at 3. We too have failed to detect any such evidence in the record, and the Government has not pointed us

(Second Violation Report at 1–2) (Page ID #454–55). He was later convicted of the offenses for which he was held. *See* R. 100 (Second Violation Report at 1–2) (Page ID #454–55). That pretrial detention was credited as time served toward his sentence. *State v. Mont*, Judgment, No. 16-CR-555, at 2 (Mahoning Cty. Ct. Com. Pl. Mar. 23, 2017); *State v. Mont*, Judgment, No. 15-CR-291, at 2 (Mahoning Cty. Ct. Com. Pl. Mar. 23, 2017). Accordingly, Mont's term of supervised release did "not run during" those ten months (nor, for that matter, during the post-conviction incarceration that followed). *See* 18 U.S.C. § 3624(e); *Goins*, 516 F.3d at 417. This means that there was still quite a bit of time left on the clock when the district court issued its warrant on March 30, 2017, R. 101 (Arrest Warrant at 1) (Page ID #458), triggering the "extension" that 18 U.S.C. § 3583(i) in turn provides.[6] The district court, in other words, had jurisdiction.

Mont seeks to avoid this result in a few ways, mostly by arguing two variants of the idea that "the district court . . . failed to take the steps that were necessary to preserve its jurisdictional authority," Appellant's Br. at 21. First, he argues that the district court neglected to mention

to any, citing only the district court's own statement. *See, e.g.*, Appellee's Br. at 13. Nevertheless, we leave this question aside, as *Goins* requires that we affirm regardless.

[6]Of course, that extension was not itself necessary in this case, because, given the length of Mont's incarceration, there would have been time left on the clock in any event when Mont's supervised-release-violation hearing finally occurred on June 28, 2017. But that may not always be the case, as indeed it was not in *Goins* itself. *See Goins*, 516 F.3d at 418–19. In other words, the interaction between the two statutory provisions can be crucial:  in some cases § 3624(e)'s having briefly paused a defendant's supervised-release clock will make the difference as to whether there was still time remaining when a court's issuance of a warrant or summons in turn triggered § 3583(i)'s extension, even though the resulting hearing itself would have otherwise impermissibly fallen "beyond the expiration of the term of supervised release," *see* 18 U.S.C. § 3583(i).

*Goins* or "make any finding regarding tolling, and instead relied upon Section 3583(i)." *Id.* at 22. This is essentially a forfeiture argument: that because the district court did not invoke *Goins* or § 3624(e)'s clock-pausing powers, those powers were never activated in the first place and cannot be activated now.

This argument fails for several reasons. First of all, as the Government notes, "Mont presents no authority establishing that the court was required to take affirmative steps to 'preserve' authority during a tolling period." Appellee's Br. at 16. Indeed, nothing in *Goins* suggests that a district court must invoke § 3624(e) specifically for its statutory commands to be in effect. Second, as the Government also notes, Appellee's Br. at 19, "[a] decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." *United States v. Henderson*, 626 F.3d 326, 334 (6th Cir. 2010) (quoting *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985)). We cannot, in other words, rule that the district court lacked jurisdiction simply because we would have explained why the district court had jurisdiction differently. Nor, third, would that kind of approach to federal-court jurisdiction fit with longstanding federal-court doctrine, which does not treat our jurisdiction as the kind of thing that can be squandered by design *or* inattention. *Cf. Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("Unlike an objection to venue, lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties. An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review.").

Mont also offers a second spin on this necessary-steps argument: that § 3624(e) pauses the clock only when a court has first undertaken the procedures—issuing a summons or warrant—outlined in § 3583(i). He points out, for example, that "this Court has specifically rejected [§ 3583(i)] as a tolling mechanism," Appellant's Br. at 22, and argues that § 3583(i) instead "permits a delayed revocation hearing only when the district court has preserved its power, or jurisdiction, to act beyond the termination of a sentence by means of issuing a summons or warrant," Reply Br. at 6.

This argument also fails. Again, there is the problem that Mont offers no authority or explanation for why a warrant or summons under § 3583(i) would serve as a necessary precondition for § 3624(e). But more importantly, nothing in the text of the statutes suggests as much, and *Goins* itself contradicts Mont's theory. *See Goins*, 516 F.3d at 418–19 (noting that the problem presented by the case was that § 3583(i) was *not satisfied* but that § 3624(e) could nevertheless render the relevant "warrant timely," *id.* at 419). And while Mont is correct that § 3583(i) is not what we have called "a tolling provision," *see Ossa-Gallegos*, 491 F.3d at 543 n.5, that fact is irrelevant. Mont's appeal fails, rather, because § 3624(e) *is* what we have called a tolling provision.[7]

---

[7]That said, what the word "tolled" means turns out to be a thorny question, susceptible to two different interpretations. *See generally Artis v. District of Columbia*, — S. Ct. —, 2018 WL 491524 (2018) (addressing whether 28 U.S.C. § 1367(d) serves to pause state statute-of-limitations periods or to provide a grace period after those periods expire). Thankfully, that ambiguity is not at issue here, as the plain text of § 3624(e) makes clear that it is, more precisely, a clock-pausing provision.

What remains of Mont's argument amounts essentially to an attack on *Goins* itself and an endorsement of the D.C. Circuit's recent decision to the contrary, *see United States v. Marsh*, 829 F.3d 705 (D.C. Cir. 2016). That is fair enough: there is indeed a circuit split on this question. *Compare United States v. Ide*, 624 F.3d 666, 667 (4th Cir. 2010) (holding that pretrial detention can qualify as imprisonment under § 3624(e)), *United States v. Johnson*, 581 F.3d 1310, 1312–13 (11th Cir. 2009) (same), *United States v. Molina-Gazca*, 571 F.3d 470, 471 (5th Cir. 2009) (same), *and Goins*, 516 F.3d at 417 (6th Cir.) (same), *with Marsh*, 829 F.3d at 705 (D.C. Cir.) (holding that pretrial detention does not qualify), *and Morales-Alejo*, 193 F.3d at 1106 (9th Cir.) (same). But *Goins* is a published decision, and "a published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). *Goins* therefore forecloses Mont's challenge to the district court's jurisdiction.

### III. CONCLUSION

Under our binding precedent interpreting federal law, the clock on Mont's supervised-release term stopped ticking the day that Mont was incarcerated in Mahoning County in connection with his eventual convictions, given that his incarceration was greater than or equal to thirty days and credited as time served for those convictions. Consequently, there was still time remaining on Mont's supervised-release clock—and therefore jurisdiction—when the

district court issued its warrant (and, for that matter, when it ultimately adjudicated Mont's supervised-release violation).  We accordingly **AFFIRM** the district court's judgment.