NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 08a0522n.06
Filed: August 26, 2008

No. 06-6326

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| ROBERTO MARTINEZ-BAHENA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: COLE, CLAY, Circuit Judges; RUSSELL, District Judge**[*]

**RUSSELL, District Judge.** Defendant-Appellant Roberto Martinez-Bahena appeals his

sentence following his guilty plea to illegal reentry into the United States in the Middle District of

Tennessee asserting that the district court: 1) imposed a substantively unreasonable sentence; and

2) erred by tolling the period of supervised release.

**BACKGROUND**

Roberto Martinez-Bahena, a native of Mexico, entered the United States illegally in 1985 at

the age of sixteen. In 1987, at the age of eighteen, Martinez-Bahena was convicted for the felony

sale, transportation, and possession of cocaine in Orange County, California, and received thirty-six

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District
of Kentucky, sitting by designation.

months probation and ninety days custody as a condition of probation. Five months after this arrest, in 1988, Martinez-Bahena was convicted for the felony sale and transportation of cocaine. As a result of this second conviction, the State of California revoked Martinez-Bahena's probation and sentenced him to two years imprisonment.

Fresh out of jail, Martinez-Bahena continued to run afoul of the law, albeit in relatively minor ways. In 1989, at the age of twenty, Martinez-Bahena spent thirty days in jail for a misdemeanor battery offense and probation violation. In 1991, at the age of twenty-two, he spent another ten days in jail for presenting false identification to a police officer.

Then, Martinez-Bahena appeared to turn a corner, both professionally and personally. Over the next fifteen years, and while residing in the United States, Martinez-Bahena had no arrests or convictions. In 1991, he began working at Bridgford Foods Corporation as a bakery supervisor and continued there on a full-time basis until late 2002. In 2003, he left Bridgford Foods and began working two jobs: one part-time as a technician at North County Toyota, and another full-time as a machine operator at Laguna Cookie Company.

During this time, Martinez-Bahena also began a family with Rosalba Atanacio Orduna-Quesada. The two began their relationship in approximately 1990, and married in 2001. Though they are now separated, they have four children and three step-children, all of whom are United States citizens.

In 1998, Martinez-Bahena received a Certificate of Rehabilitation from the State of California as to his two prior felony drug convictions, committed over ten years earlier. Under California Penal Code § 4852.13, a person who has been released from a state prison, who has not been incarcerated since his release, and who presents satisfactory evidence of a three-year residence in California, may apply for such a certificate, which embodies a finding that the person is

rehabilitated. *Id.* § 4852.13(a). The State then begins a formal investigation to determine whether a full pardon from the Governor would be appropriate. *Id.* At the time of his deportation, Martinez-Bahena's application for a pardon had yet to be adjudicated by the State. A pardon does not officially remove the conviction from an individual's criminal record.

On March 14, 2001, Martinez-Bahena filed an Application to Register Permanent Residence or Adjust Status, in an attempt to gain lawful status as a permanent resident of the United States. Immigration officials denied that application based on his two prior felony convictions in California. In April 2004, Martinez-Bahena was charged with being an illegal alien present in the United States after having been convicted of a crime classified as an aggravated felony. One month later, an immigration judge issued an order deporting Martinez-Bahena to Mexico after denying his application for voluntary departure.

Martinez-Bahena returned to the United States illegally after six months in Mexico, initially residing in California, then moving to Tennessee in early 2005. He immediately began working two jobs – one as a full-time forklift operator for A.P.L. Logistics, and another as a part-time banquet server for Sheraton Hotels and Resorts.

The events that give rise to the instant case began on February 1, 2006, when an officer with the Metropolitan Nashville Police Department stopped Martinez-Bahena for a routine traffic violation. Upon conducting a search via his cruiser's on-board computer, the officer discovered that Martinez-Bahena was a previously deported aggravated felon and placed him under arrest.

A week later, on February 8, 2006, a federal grand jury sitting in the Middle District of Tennessee indicted Martinez-Bahena on one count of illegal reentry into the United States after having been removed or deported subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On July 10, 2006, Martinez-Bahena pleaded guilty to the

indictment without a plea agreement, which carried with it a maximum statutory penalty of twenty years imprisonment, with a fine of up to $250,000, a mandatory $100 special assessment fee, and a term of supervised release of not more than three years.

The Pre-sentence Investigation Report ("PSR") determined that, according to the United States Sentencing Guildlines, Martinez-Bahena's base offense level is eight. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.2(b)(1)(A)(i). The PSR increased the offense level by sixteen levels because Martinez-Bahena previously was deported or unlawfully remained in the United States after a conviction for a felony that was a drug trafficking offense for which the sentence imposed exceeded thirteen months. *Id.* Under U.S.S.G. § 3E1.1(a), the PSR recommended a three-point decrease for acceptance of responsibility. Based on a total offense level of twenty-one and a criminal history category of one, the PSR calculated the Guidelines sentencing range as thirty-seven to forty-six months.

Prior to sentencing, Martinez-Bahena filed a Sentencing Position, a Sentencing Memorandum, and a Motion for a Substantial Downward Departure, requesting a sentence below the Guidelines range under U.S.S.G. § 5K2.0 based on his cultural assimilation, his long work history in the United States, his family ties, the non-violent nature of the underlying felonies, the length of time between the convictions and his arrest, his attempts to expunge his criminal record and attain legal resident status, and the disparity in sentencing resulting from the lack of a "fast-track" program in the Middle District of Tennessee, which permits defendants indicted for illegal re-entry to receive a four-level reduction upon motion by the Government.

The Government responded that, as an alien who had been previously deported, Martinez-Bahena should be sentenced within the Guidelines range, that his case did not present facts outside the heartland of other illegal reentry cases, and that the absence of a fast-track program did not create

unwarranted sentencing disparities.

At the sentencing hearing, the district court noted that he had read and reviewed all the submissions, including the several letters submitted in support, the various papers, and the sentencing memorandum. After hearing testimony, reviewing additional evidence, and hearing the arguments of the parties, the court denied the motion for a downward departure and sentenced Martinez-Bahena to thirty-seven months imprisonment, the bottom of the Guidelines range. The court also sentenced Martinez-Bahena to two years of supervised release, to be suspended or tolled while Martinez-Bahena remained outside the jurisdiction of the United States.

In imposing the sentence, the court outlined the 18 U.S.C. § 3553(a) factors, acknowledged the advisory nature of the Guidelines, and explained the reason for the sentence:

> In the opinion of the Court, a guideline sentence is appropriate. I am denying the request for a nonguideline sentence either through 3553 or a downward departure. In my view, a guideline sentence is necessary most specifically for deterrence. Last time Mr. Martinez was deported, he was back within a few months. According to the defendant's brief, about two months. He testified about six months. He needs to be deterred. Others need to be deterred. And there is a lack of appreciation for the fact that his presence in this country is illegal.
>
> Many of the arguments that are presented are important to consider in the policy decisions about who should be considered illegal or not illegal, but his presence in the United States is illegal.

The court then concluded that "[t]here are sad family consequences from this case, regrettably. That's ordinary rather than extraordinary. Most cases have painful consequences for family members. I wish it were otherwise, but it is not." At the close of the hearing, Martinez-Bahena's counsel stated: "I think for appellate purposes I am required to say that we object to the sentence."

Martinez-Bahena timely appealed his sentence.

## ANALYSIS

### I. STANDARD OF REVIEW

The district court's task at sentencing is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the factors set forth in § 3553(a). 18 U.S.C. § 3553(a). "The court need not recite the[] factors [listed in 18 U.S.C. § 3553(a)] but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Penson*, 526 F.3d 331, 336 (6th Cir. 2008) (quoting *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005)).

Under *Rita v. United States*, --- U.S. --- , 127 S. Ct. 2456 (2007), and *Gall v. United States*, --- U.S. --- , 128 S. Ct. 586 (2007), we review a district court's sentencing determination for reasonableness under a deferential abuse-of-discretion standard.

> This review entails a two-step process. The appellate court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."

*Penson*, 526 F.3d at 336 (quoting *Gall*, 128 S. Ct. at 597); s*ee also United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) ("[I]n reviewing sentences for procedural reasonableness we must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range."); *United States v. Lalonde*, 509 F.3d 750, 769-70 (6th Cir. 2007).

After we have found the district court's sentencing to be procedurally sound, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597. We have held that "[a] sentence may be substantively

unreasonable where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007) (internal quotations and alterations omitted). This consideration should be based on "the totality of the circumstances." *Gall*, 128 S. Ct. at 597.

"On abuse-of-discretion review, [we give] due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Id.* at 602. *Gall* instructs us that a district court has not necessarily committed reversible error by attaching great weight to any single factor, *id.* at 600, nor if we "might reasonably have concluded that a different sentence was appropriate," *id.* at 597. The "central lesson" to be learned from the Supreme Court's recent sentencing decisions is "that district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them." *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). Accordingly, we "credit a within-Guidelines sentence with a rebuttable presumption of substantive reasonableness." *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007). This "presumption," however, is not a "presumption" as generally defined; "rather than having independent legal effect, [it] simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Rita*, 127 S. Ct. at 2643.

## II.     ANALYSIS

On appeal, Martinez-Bahena challenges only the substantive reasonableness of his sentence. He contends that the age of his prior felony conviction, lack of deportation proceedings for years thereafter, his efforts to obtain certificates of rehabilitation and pardons for those offenses, his years

without any other offenses, and his other efforts at rehabilitation, counsel against applying the sixteen point increase for his prior felony drug conviction. *See* U.S.S.G. § 2L1.2(b)(1)(A)(i). The Government, in turn, argues that the district court fully considered both the Guidelines range and all of the § 3553(a) factors before imposing the sentence, and that Martinez-Bahena's prior criminal conduct demonstrates that he is a "proven, dangerous felon" who "has a propensity to commit crime."

The central question in this case is whether the district court, by emphasizing the need to deter illegal aliens from re-entering the United States, either failed to consider pertinent § 3553(a) factors or gave an unreasonable amount of weight to any pertinent factor. After reviewing the § 3553(a) factors, the court sentenced Martinez-Bahena to thirty-seven months imprisonment, the bottom of the Guidelines range, and two years supervised release to be tolled while he remained outside the jurisdiction of the United States. As noted above, Martinez-Bahena received a sixteen-level enhancement for two prior felony drug convictions he received over fifteen-years prior to his initial deportation, which raised his Guidelines range from zero to six months to thirty-seven to forty-six months, a nearly eight-fold increase.

## A. Substantive Reasonableness

Under U.S.S.G. § 2L1.2(b)(1)(A)(i), a previously deported alien receives a sixteen-level increase in the recommended Guidelines range for illegal re-entry if that individual has "a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense . . ." As relevant here, a "drug trafficking offense" is defined in the Application Notes as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or

dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 2L1.2 cmt. n.1.

The record reveals no indication that the district court based Martinez-Bahena's sentence on impermissible factors. The record readily demonstrates that the court considered both the relevant § 3553(a) factors and the defendant's arguments for leniency. Additionally, we find that the court did not give undue weight to the need for deterrence, a specifically enumerated consideration under § 3553(a). 18 U.S.C. § 3553(a)(2)(B).

We also find that the absence of a fast-track program in the Middle District of Tennessee does not create an unwarranted sentencing disparity. Section 5K3.1 of the Sentencing Guidelines provides for a downward departure of up to four levels upon motion of the Government in districts where an early disposition, or fast-track, program has been authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides. U.S.S.G. § 5K3.1. We have held that the absence of fast-track programs in certain districts does not create unwarranted sentencing disparities. *United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006) ("[F]ast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts. As a result, such a disparity does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities").

**B.      Tolling the Period of Supervised Release**

The district court tolled the period of supervised release while Martinez-Bahena remained outside the jurisdiction of the United States following his imprisonment. Following sentencing in this case, and as the Government concedes, the Sixth Circuit issued an en banc decision in *United States v. Ossa-Gallegos*, 491 F.3d 537 (6th Cir. 2007), which held that the period of supervised

release cannot be tolled during a defendant's absence from the United States.  *Id.* at 538-39.

## Conclusion

Having studied the record on appeal and the briefs of the parties, we are not persuaded that the sentence imposed by the district court is unreasonable in light of the factors set forth in § 3553(a); however, we find that the district court erred in tolling the period of supervised release while Martinez-Bahena remained outside the jurisdiction of the United States following his imprisonment.  Accordingly we **VACATE** the judgment of the district court and **REMAND** for resentencing with instructions that the remand be limited to setting forth lawful conditions of supervised release.